Lee D. CLAY, Mildred E. Clay, Joel D. Wiegert, Emory J. Stevenson and Tom Elliott, and all other persons unknown claiming any right, title or interest in the subject real estate, Appellants,

v.

Dan SANDAL d/b/a Dan Sandal, General Contractor, Appellee.

Joel D. WIEGERT, Appellant,

v.

Dan SANDAL d/b/a Dan Sandal, General Contractor, Appellee.

Nos. 60(a), 60(b).

Supreme Court of Alaska.

March 13, 1962.

Taylor & Taylor, by Fred D. Crane, Fairbanks, for appellant Elliott.

Henry J. Camarot, McNealy, Merdes & Camarot, Fairbanks, for appellant Wiegert.

Robert A. Parrish, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The appellee Dan Sandal filed an action to foreclose a contractor's claim of a mechanic's lien resulting from an executed oral construction contract. During the pendency of the action, many developments occurred to complicate, and in some instances, alter the issues to be determined. The facts will be recited only generally at

892

this point in the opinion and in more detail as each point on appeal is discussed.

In 1952 Lee D. Clay leased the real property herein concerned to appellant Joel D. Wiegert and his partner for a term of 10 years with an option to renew for an additional 5 years. As a part of the consideration for the lease Wiegert was to construct a business building on the property, which he did. Wiegert then purchased his partner's interest in the venture. In 1955 Wiegert sublet most of the realty and the building to Tildon and Marie Elliott for a term of 10 years. The Elliotts had been divorced in 1954 but were associated as business partners. In June of 1956 Tildon's partnership interest was transferred to appellant Marie Elliott. Subsequent to this transfer Tildon Elliott continued to operate the business. Because of difficulties with Tildon, Marie Elliott left Alaska in November, 1956. During Marie Elliott's absence from Alaska and while Tildon was operating her business located on the real property and in the building herein concerned, Tildon entered into an oral agreement with Sandal to construct improvements to the building. The improvements were completed before Marie Elliott's return in May of 1957. Shortly after her return she resumed control and operation of the business. Sandal filed a claim of lien for contract labor and materials furnished. Marie Elliott thereafter purchased the fee in the realty from Lee D. and Mildred Clay. During the pendency of this action Marie Elliott redeemed the real property and building from a judgment of tax foreclosure obtained by the city of Fairbanks and received a conveyance from that city.

The trial court found an enforceable oral construction contract had been entered into between Sandal and Tildon Elliott and that Marie Elliott was estopped to deny that Tildon acted as her agent in the making thereof. Sandal was granted a personal judgment against Marie Elliott in the total sum of $12,383.48 and a lien against the subleasehold estate of Marie Elliott in the realty and building in the same amount.

The judgment also provided for a lien in favor of Sandal against Wiegert's leasehold interest in the realty and defeasible title to the building in the sum of $9,759.20. Judgment was given to Wiegert against Marie Elliott in an amount equal to the lien imposed on Wiegert's interests in favor of Sandal, i. e., $9,759.20. Personal judgment in favor of Sandal against Marie Elliott for costs and attorney's fees was also given.

Separate appeals were filed by Wiegert and Marie Elliott and consolidated for hearing.

*Oral Agreement.*

■ Appellant Wiegert contends that the trial court erred in finding an enforceable oral agreement between Sandal and Tildon P. Elliott because the terms of any understanding had between them were too indefinite to form a binding contract.

Tildon Elliott's testimony describing his first conversation with Sandal indicates that the work was outlined by him to Sandal on the premises; it was agreed that Sandal was to do the carpentry work and Tildon the plumbing and heating; Sandal asked if he wanted it done on a straight contract basis or on a time and material or cost plus, basis; Tildon preferred the time and material basis, if it didn't cost too much, and testified that it was agreed between them that it would be done on the time and material basis and that Sandal was to be paid by taking one-half of the rental money. After the work had commenced Tildon says he had several conversations with Sandal regarding the total cost of improvements. On one occasion he paid Sandal $500 on account and asked him not to go over $7,000; Sandal replied that it was over $9,000 at that time and stated that from that time onward Tildon would have to "pay as you go". Tildon said that he did pay an additional $1,900 to Sandal to get the work finished. Sandal testified that the agreement was that he "was to design and supervise and sublet all sub-contract, supervise the work at so much an hour for

a man and overhead at the rate of 10%". The rate per hour for carpenters was $7.50 with no hourly rate for himself. The 10% overhead was to cover his overhead, gasoline and bookkeeping. Sandal disputed Tildon's testimony that payment for the work was to be made from rentals. There is little conflict in the testimony of the two witnesses. The terms of their agreement were sufficiently definite. The trial court was justified in finding that an enforceable oral contract was formed.[1]

*Agency by Estoppel.*

■ Both appellants claim the trial court erred in finding an agency by estoppel between Tildon Elliott and Marie Elliott. Very little assistance has been given to the court by counsel for appellants. This issue was not mentioned in appellant Marie Elliott's statement of points. Although set out as a specification of error in her brief and argued in broad terms, practically none of the requirements of Supreme Court Rule 11(a) (6) were complied with. This point was raised in the appellant Wiegert's statement of points but was not listed in a specification of errors in his brief. In fact his brief did not even contain a specification of errors or summary of argument. In his argument on this point Wiegert contends that "The clear indication of the testimony * * *" is in favor of his contention without once referring the court to some part of the more than 1200 pages of testimony that might support his statement.

Our examination of the transcript reveals that there was adequate testimony to support Finding No. 6 that an agency by estoppel existed between Tildon Elliott and Marie Elliott. The Elliotts were divorced in 1954 but continued to operate a business on the premises here in question as a partnership until June of 1956. By a property settlement of June 1956 Marie became the sole owner of the business known as the

512 Club or Pizza Palace. There was testimony that the parties became somewhat reconciled in September of 1956; that Tildon was negotiating to buy the business back from Marie and that transfer papers were drawn up by an attorney and signed by Tildon but not by Marie. Tildon operated the business for three weeks in September of 1956 during which time he quarrelled with Marie, who went to Anchorage for a time, returning to Fairbanks apparently in November, only to leave again to go outside Alaska leaving Tildon in possession of the business. Marie remained out of Alaska until May of 1957. Prior to and during her absence Tildon managed the employees, handled the money, and paid the rental monthly to appellant Wiegert. The liquor license over the bar remained in the names of both Tildon and Marie for the balance of 1956. The license for 1957 was purchased by Tildon in his name only and remained in his name until June of 1957 when it was transferred to Marie.

It was during the absence of Marie from Alaska, while the business was being operated by Tildon under the above circumstances, that the oral construction contract was made by Tildon with Sandal. Tildon had advised Sandal that his partner was Marie Elliott on one occasion, and on another occasion that he thought he was going to own the business himself but that the business was in his wife's name. Sandal testified that he was informed that Marie and Tildon Elliott were partners at the time the oral contract was entered into, even though divorced; that he relied on their partnership and that he understood that the improvements were being made with Marie Elliott's approval. The testimony was contradictory in some respects but we find that there is ample support for the trial judge's finding. Marie Elliott was aware, or should have been aware, of the fact that Tildon was operating her business

1. Mancuso v. Krackov, 110 Cal.App.2d 113, 241 P 2d 1052 (1952). See also Mason v. Rolando Lumber Co., 111 Cal.App.2d 79, 243 P.2d 814, 815 (1952) holding that where the contract has been executed the defense of uncertainty is no longer available.

in all respects as though he were an owner or partner and that the liquor license on the wall indicated that they were still partners. Knowing these facts she departed Alaska and left him in full control of the premises and business for approximately six months. Marie Elliott's conduct under the facts of this case amounted to a consent to the representations of Tildon Elliott, on the faith of which Sandal extended credit to the apparent partnership.[2]

*Non-lienable Items.*

It is argued by both appellants that Sandal's notice of claim of lien incorrectly included item No. 3 for "rough electrical work of an agreed value of $322.99" and item No. 6 for "fire insurance" in the sum of $726.51.

■ What must be borne in mind is that Sandal sued on an alleged oral contract by the terms of which he as contractor would furnish all labor and materials, including subcontractors' services, with the exception of the plumbing and heating. By statute a contractor in Alaska is entitled to recover upon a lien filed by him only such amount as may be due to him according to the terms of his contract.[3] This provision limits a contractor's lien recovery to the amount called by his contract, but would include subcontractor's services if, by the

terms of his contract, the contractor was responsible for the furnishing of such services. The trial court found that there was an oral contract and by its terms Sandal was to be paid the cost of all materials and subcontracts. The complaint described the electrical subcontractor services furnished as "electrical materials and labor", which is a lienable item. Therefore, appellant's argument that the lien should fail because the cost of the electrical subcontract labor and materials was included has no merit. Under the contract found by the court it was a properly included item.

■ Apparently the trial court not only denied Sandal a lien for the amount of the cost of fire insurance purchased to cover the premises during the working period, but denied him any recovery at all for this expense. We hold that it was properly a lienable item under the facts of this case and that he is entitled to a lien against Wiegert as well as Marie Elliott for this expense.[4]

■ Appellant Wiegert cites Bloom et al. v. McCluskey et al. for the proposition that the mere fact that non-lienable items were included imputed bad faith.[5] While Bloom may have been some support for appellant's argument when it was decided in 1925, it is

2. Sec. 28–1–28 A.C.L.A.1949 (Uniform Partnership Act) in pertinent part provides:

"§ 28–1–28. Holding out as partner: Estoppel. (1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such persons, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made. * * * [L.1917, ch. 69, § 16, p. 165; CLA 1933, § 2744.]"

See also Buehner Block Company v. Glezos, 6 Utah 2d 226, 310 P.2d 517, 520 (1957) where partnership by estoppel was found on facts similar to those of this case.

3. Sec. 26–1–10 A.C.L.A.1949 in pertinent part states:

"§ 26–1–10. Amount recoverable by contractor on lien: * * *. Any contractor shall be entitled to recover upon a lien filed by him only such amount as may be due to him according to the terms of his contract * * *. [CLA 1913, § 701; CLA 1933, § 1991.]"

4. Paget v. Peters, 133 Or. 608, 286 P. 983, 987, 289 P. 1119 (1930).

5. 7 Alaska 349 (D.Alaska 1925)—a literal reading of the court's opinion on pp. 355–356 could lend substance to appellant's argument if the decision were considered in a vacuum, disregarding other decisions and subsequent acts of our legislature.

not now the law of Alaska for the proposition cited. The law is that the inclusion of non-lienable items in the amount of claimant's demand, made in good faith, shall not be deemed material, unless substantial rights of the adverse party acquired in good faith without notice are affected.[6] There is no claim that Sandal acted in bad faith or that he did not include the items in good faith, nor that any substantial right of appellant has been affected by their inclusion.

■ Appellants argue that the allegedly non-lienable items were commingled with lienable items and this caused the entire lien to fall. Of course, we have already decided that the two items were lienable. But even if they were non-lienable there would be no merit to appellants' argument. The two items were not commingled, or joined or mixed, with other items of the claim. They were set out in the claim of lien as separate numbered items with the amount claimed for each item individually shown.

*Reasonable Value.*

Finding of Fact No. 4 stated:

"4. Pursuant to the terms of said contract, and between the dates of December 6, 1956 and April 5, 1957, Plaintiff furnished labor and materials of the value of $12,402.14, less rebates of $192.94, plus $120.92 [7] overhead, for a total of $13,430.12. The reasonable value of said labor and materials was $12,209.20. Payment was made to Plaintiff in the amount of $2,450.00 in reduction thereof."

Appellant Wiegert claims the court erred in finding the "reasonable value" of the labor and materials furnished by Sandal, since he was suing on an alleged contract to recover the *cost* of labor and materials furnished. Appellant argues that if the court had intended to determine the reasonable value, then it erred in excluding appellant's offer to introduce evidence on reasonable value.

It seems quite clear from the finding that the court, in using the term "reasonable value", was not attempting to differentiate the total cost of labor and materials proved to have been furnished by Sandal under the contract from the total of what it had determined to be the reasonable value of the same labor and materials. As we interpret the findings the court intended to award Sandal a lien against Wiegert's interests only for the cost of labor and materials furnished and not for the additional contract item of $1,220.92 for overhead and supervision. This was accomplished by deducting the amount of a rebate in the sum of $192.94 from $12,402.14, the total cost of labor and materials furnished, and then giving credit for a payment in the sum of $2,450 to ar-

6. Sec. 26-9-5 A.C.L.A.1949 states:
 "§ 26-9-5. Sufficiency of lien notice or pleadings: Effect of mistakes, omissions, or inclusion of improper items: Amendment. No mistake in formality or lack of statement, either in the lien notice or the pleadings, shall be ground for dismissal or unnecessary delay in the action to foreclose a lien: Substantial compliance with the provisions of law, relative to the contents of the lien notice shall be deemed sufficient, provided that such notice shall satisfactorily show the name of the claimant, the amount of his demand, the time of his employment, the property sought to be charged with the lien sufficient for identification and the name of the owner or reputed owner thereof. The inclusion of non-lienable items in the amount of the claimant's demand or error in the terms and conditions of the contract of employment, if there be any contract of employment, or other error in the lien notice, made in good faith, shall not be deemed material, unless such error shall affect the substantial rights of the adverse party, acquired in good faith without notice; and the lien notice and pleadings may be amended at any time before judgment. If it be shown that a material statement or averment has been omitted or misstated it shall be ground for a reasonable delay or continuance to enable opposing parties to meet such amendment, and no nonsuit or dismissal shall be entertained in such action except upon the merits of the cause. [L.1933, ch. 113, § 61, p. 228; CLA 1933, § 2085.]"

7. This item represented the 10% contractor overhead or supervision cost and should have been stated as $1,220.92.

rive at the lien amount of $9,759.20. "Reasonable value" as used by the court was synonymous with the costs it found Sandal had proved for labor and materials furnished under the contract.

By statute, the maximum a contractor may establish as a lien can not exceed the amount due to him under the terms of his contract.[8] But there must be a contract with the person from whom the contract lien recovery is sought, or someone privy to him, otherwise the contractor's lien recovery may be limited to the reasonable value of the labor and materials furnished. In this case Sandal's contract was with Marie Elliott in effect. The contract provided that Sandal was to be reimbursed for the cost of labor and materials furnished and in addition, a sum equal to 10% of the cost of labor and materials, for his overhead or supervision. Since he had no contract with Wiegert, Sandal was not given a lien against Wiegert for the 10% overhead and supervision item, although this amount was included in the amount of the lien awarded him against Marie Elliott. The award as to Wiegert was consistent with the wording of sec. 26–1–1 before its amendment in 1949[9] since it allowed a lien only for labor and materials. However, since 1949 the section has included "design or supervision services".[10] The only way we can account for the trial court's refusal to allow Sandal a lien against Wiegert for his overhead or supervision item of $1,220.92 is that it was influenced by the wording of 26–1–1 before its amendment

in 1949.[11] We are of the belief that Sandal's lien against Wiegert should have included this item.

*Late Filing of Claim of Lien.*

Appellant Marie Elliott contends that the work was totally performed as of April 2, 1957 or sooner and that the claim of lien filed on July 1, 1957 was not timely.[12] We are not referred to any portion of the record or transcript where these assertions might be verified, and we have been unable to find any. There is evidence to support the trial court's finding that the claim was timely filed and we affirm on this point.

*Construction of Lien Statutes.*

In Point V of his argument appellant Wiegert urges that applicable Alaska law allowing mechanics' and materialmen's liens is in derogation of the common law and must be strictly construed. Appellant has obviously overlooked § 26–9–13 A.C.L.A.1949 which requires that the lien statutes be liberally construed.[13] He has overlooked the first sentence of Russell v. Hayner,[14] which he cites and which states, referring to the Alaska lien statute: "The act relating to mechanics' liens should be liberally construed".

Wiegert argues further that although he was the owner of the building and of a leasehold interest in the realty, he did not employ Sandal to do any work, therefore no lien can attach to his interests under section 26–1–1 as amended,[15] because there

8. See note 3, supra.

9. S.L.A.1949, ch. 20.

10. Sec. 26–1–1 A.C.L.A.1949 has been amended twice since 1949; S.L.A.1953, ch. 14 and S.L.A.1959, ch. 57, each amendment retaining the lien for "design or supervision services".

11. See Christman v. Salway, 103 Or. 666, 205 Pac. 541, 545 (1922), limiting a contractor's recovery to the cost of labor and materials furnished as against one not a party to the construction contract.

12. Sec. 26–1–5 A.C.L.A.1949 provides in part that claimant " * * * within ninety days after the completion of his contract or the alteration or repair thereof, or after he has ceased to labor there-

on from any cause, or after he has ceased to furnish materials therefor * * *" shall file his lien.

13. Sec. 26–9–13 A.C.L.A.1949 states:
"§ 26–9–13. Liberal construction of Act. The intent of this Act [§§ 26–1–1— 26–7–6, 26–9–1—26–9–13 herein] is hereby declared to be remedial and its provisions shall be liberally construed. [L. 1933, ch. 113, § 69, p. 231; CLA 1933, § 2093.]"

14. 130 F. 90 (9th Cir. 1904).

15. Sec. 26–1–1 A.C.L.A.1949, as amended by S.L.A.1953, ch. 14 states:
"§ 26–1–1. Certain persons entitled to lien for work or labor done or materials furnished. Any person or firm, contrac-

it is specifically provided that the lien arises for the work or labor done or material furnished at the instance of the *owner* of the building or other improvement, *or his agent*. Admittedly the work was not done at the instance of Wiegert or his agent.

Section 26-1-4 provides that the work shall be deemed to have been done at the instance of the owner unless, within three days after he has learned of the work, he posts written notices of non-responsibility on the land, building or other improvement.[16] Wiegert maintains that this provision of the law can not be construed to apply to him in his capacity as owner of the building located upon his leasehold so as to make the building subject to a lien. He argues that the words " * * * constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein * * *" in section 26-1-4 confine its application to those owning or claiming an interest in the land upon which a building or improvement is constructed. He argues that at best, only his leasehold interest in the land could be made the subject of a lien under this section and not the building which he owned. The word "owner" should be related only to "lands" and the words "interest therein" should be related only to "lands" according to the argument.

Appellant's construction of section 26-1-4 appears to be correct. We see no logical reason why its provisions were not expanded to include the owner of a building or other improvement, but as it now reads it does not do this. If Wiegert owned only the building herein concerned and not the leasehold property upon which it was located, his contention that no lien attached to the building would have more merit.

 There is no question but that the lien can and should attach to his leasehold interest. There was evidence to support the trial court's finding that he had knowledge of the construction being performed on his building on his leasehold and that he did not post notices of non-responsibility. The lease from Lee D. Clay to Wiegert specifically provided that construction of a business building on the property by Wiegert was a part of the consideration. But it also provided that the building was to "attach to the said realty as a part thereof and become the property of lessor" upon the expiration or termination of the lease. As between the parties to the lease the intent apparently was that the building not attach to or become a part of the realty during the term, even though lessee was obligated to construct it as a part of the consideration.

tor * * * and other persons performing design or supervision services or performing any labor upon or preliminary to the construction of, or furnishing any material for the construction, alteration, or repair, either in whole or in part of any building * * * shall have a lien upon the same for the work or labor done or material furnished at the instance of the owner of the building or other improvement, or his agent. [Approved March 4, 1953]."

This section was again amended in S.L.A.1959, ch. 57. The latter amendment is not applicable to the issues before us which arose in 1957.

16. Sec. 26-1-4 A.C.L.A.1949 at the time these issues arose stated:

"§ 26-1-4. Notice of non-responsibility. Every building or other improvement mentioned in section six hundred and ninety-one [§ 26-1-1 herein], constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this code, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration, or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon the land, or upon the building or other improvement situated thereon. [CLA 1913, § 694; CLA 1933, § 1986.]"

A later amendment in S.L.A.1961, ch. 71 is not pertinent to this decision.

But should this stipulation govern where a third person has acquired a lien upon the leasehold interest of lessee by reason of improvements made to the building located on the leasehold? We do not think so. We hold that as to Sandal's lien, the building had become an integral part of the leasehold estate. It was not an item of personal property to be considered separately from the realty upon which it was constructed and Wiegert's interest in that realty. From what has been said it follows that Sandal's lien against Wiegert applies to the building as well as to the leasehold upon which it was located.[17]

*Legal Effect of Tax Deed to Marie Elliott.*

Appellant Marie Elliott has assigned as error the failure of the trial court to pass on the validity and effect of the tax deed to her from the city of Fairbanks, but has done nothing by way of briefing the question that would assist this court in making a determination. Her counsel has ignored most of the requirements of our rules pertaining to defining the questions of law and fact. Appellee Sandal refused to discuss the question in his brief because of the failure of appellant Marie Elliott to present it in a form complying with the rules of court. Appellant Wiegert's brief ignored the question entirely although its disposition was vital to his property interests. How the trial court could purport to dispose of the various questions involved and adjust the rights of the parties concerned without facing up to and disposing of the question of the effect of Marie Elliott's tax deed is a mystery to us.

Lee D. Clay leased the land in question to a partnership consisting of appellant Wiegert and one Stevenson in March of 1952 for a term of 10 years with an option to renew for an additional term of 5 years. The Wiegert-Stevenson partnership was dissolved in 1954 and all of Stevenson's interest passed to Wiegert. In September of 1955 Wiegert sublet one-half of Lot 9 and all of Lot 10 to Tildon and Marie Elliott for a term of 10 years commencing in October of 1955, Wiegert agreeing therein to exercise his option to renew his lease for 5 years in 1962 so that the Elliott lease could be fully effective. In June of 1956 the Elliotts dissolved their partnership. The 512 Club located in the building constructed by Wiegert, was transferred by bill of sale to appellant Marie Elliott and the remainder of the term of the lease from Wiegert was assigned to her. From November of 1956 until May of 1957 appellant Marie Elliott was absent from Alaska. The real property in question and the 512 Club were under the control and management of Tildon Elliott during Marie's absence. It was during Marie Elliott's absence that the oral contract was entered into between Tildon Elliott and Sandal. The contract work was completed on April 5, 1957. After her return and in September of 1957 Marie Elliott contracted with Lee D. and Mildred Clay for the purchase of the fee of the real property here involved, subject to the Wiegert lease. This purchase was by real estate contract with a warranty deed to be held in escrow until the balance of the purchase price had been paid over a period of 24 months. The warranty deed was delivered to Marie Elliott in September of 1959. Marie Elliott admitted knowledge of the existence of Sandal's claim of lien at the time she contracted with the Clays. From 1957 onward certain taxes due the city of Fairbanks on Lots 9 and 10 of Block 1, Gateway Subdivision, and on the building located thereon became delinquent and were foreclosed by the city. This foreclosure also included taxes delinquent since 1955 applicable only to the building located on the property. After title to the property and building had been confirmed in the city by deed from the clerk of court after the one year redemption period had ex-

17. See J. B. Ehrsam & Sons Mfg. Co. v. Rice, 153 Kan. 483, 112 P.2d 95 (1941), holding that a mechanic's lien attached to the leasehold estate and to the grain elevator which had been erected upon it, although the lease gave lessee the right to remove buildings and improvements.

pired, Marie Elliott paid to the city all of the amount claimed to be due on the property and building in the amount of $2,800.[18] On February 26, 1960 the city of Fairbanks deeded Lots 9 and 10, Block 1, Gateway Subdivision together with their appurtenances to Florence M. Elliott who is the same person as appellant Marie Elliott herein.

We consider first the effect of the tax foreclosure and tax deed on the interest of the appellant Wiegert. Under the terms of the lease to him from the Clays he agreed to erect a building on Lots 9 and 10 within 2 years which was to remain his property during the term of the lease and any renewal, thereafter to attach to the realty and become the property of lessor. The Clays agreed to pay one-half the amount of the increased taxes resulting from the construction of the building, the balance to be paid by Wiegert as lessee. The right to sublet portions of the land was given. Wiegert's lease to the Elliotts in September of 1955 covered only one-half of Lot 9 and all of Lot 10, Block 1 of Gateway Subdivision. The Elliotts were not required by their sublease to pay any of the taxes assessed on the building or realty. From the record it appears that Wiegert failed to pay any part of a city tax assessment of $340 against the building located on Lots 9 and 10 for 1955. Uncontradicted testimony indicates that other taxes on the land and building became delinquent but the bulk of the unpaid taxes appear to have accrued against the building which belonged to Wiegert and upon which the contract labor and materials were expended. From the date of her contract to purchase the realty from the

Clays in September of 1957 Marie Elliott possessed an equitable interest in the fee and succeeded to the Clays' rights as lessor to Wiegert. After September of 1959 she owned the property in fee, subject still to Wiegert's lease. Wiegert's failure to pay any part of the taxes assessed against the building was a breach of the terms of his lease from the Clays which Marie Elliott acquired when she purchased from the Clays. On the other hand, the same lease required the Clays to pay a part of the taxes assessed against the realty upon which the building was located and this obligation became Marie Elliott's on her succession to the Clays' interest in the property. Both Wiegert and Marie Elliott were therefore at fault for permitting the taxes to become delinquent. Either had the right to redeem the property from the tax foreclosure by purchase.[19]

The doctrine of merger will not be applied to the facts of this case.[20]

The question is whether redemption by appellant Marie Elliott and the conveyance of the property to her by the city of Fairbanks had the effect of wiping out Wiegert's lease and ownership of the building, as she contends.

We hold that it did not have that effect. In one aspect of the facts Marie Elliott was Wiegert's lessee and in another she was Wiegert's lessor. As Wiegert's lessor she had an obligation to pay a part of the taxes. But regardless of which aspect of the relationship is given emphasis, it would be inequitable to permit Marie Elliott to set up her tax title against Wiegert. Respectable authorities have consistently held to this effect.[21] Although

18. The procedure being followed by the city is that contained in S.L.A.1957, ch. 174, as amended by S.L.A.1959, chs. 69 and 166 and S.L.A.1961, ch. 120.

19. S.L.A.1957, ch. 174, § 54, as amended by S.L.A.1959, ch. 166, § 3.

20. Katz v. Obenchain, 48 Or. 352, 85 P. 617 (1906); Holtzmeyer v. Van Doren, 172 Or. 176, 139 P.2d 778, 148 A.L.R. 808 (1943).

21. Dalton v. Lessard, 136 Me. 94, 2 A.2d 172 (1938) where lessor obtained a tax title under circumstances very similar to those of this case, after sublessees had permitted taxes to become delinquent. Lessor landlord was estopped to assert the tax title obtained against his lessee; Hunt v. Schneider, 61 Colo. 104, 156 P. 600, L.R.A.1916F, 204 (1916) where a tenant was prevented from setting up a tax title against his landlord; see Koch

she received a conveyance from the city of Fairbanks purporting to convey full title to the realty and building to her, as to Wiegert, we must hold that she was merely a redemptioner and estopped to assert her tax deed title against his lease and ownership of the building.

 On equitable principles we must also hold that appellant Sandal's lien against the subleasehold interest of Marie Elliott in the land and the building survived the tax foreclosure and conveyance to her. The improvements to the building, made largely at Sandal's expense, at Tildon

v. Kiron State Bank, 230 Iowa 206, 297 N.W. 450, 140 A.L.R. 273 (1941) for a full discussion and review of the authorities.

Elliott's instance, have accrued to Marie Elliott's benefit as lessee, as lessor and as owner of the reversion. It would be inequitable to permit her to extinguish a lien which she indirectly created, by acquiring the tax title.[22]

The case is remanded with directions to the trial court to prepare full findings of fact, conclusions of law and judgment consistent with this opinion.

AREND, J., took no part in the consideration of this case.

22. See Hammond Lumber Co. v. Goldberg, 125 Cal.App. 120, 13 P.2d 814, 819–820 (1932).