Dalton T. MOORES and Mildred Moores,
Appellants,

v.

ALASKA METAL BUILDINGS, INC., an
Alaskan corporation, Appellee.

No. 962.

Supreme Court of Alaska.

Dec. 20, 1968.

Theodore M. Pease, Jr., Burr, Boney &
Pease, Anchorage, for appellants.

Warren C. Colver, Juliana D. Wilson,
Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND
and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal concerns a mechanic's and
materialman's lien foreclosure action.
After trial to the court, findings of fact
and conclusions of law generally favorable
to appellee were entered by the superior
court. In this appeal appellants attack the
adequacy of the trial court's findings of
fact, as well as several of the conclusions
of law which were reached below.

The record discloses that appellants are
the owners of real property which is located

on the Seward Highway outside the city of Anchorage. In December of 1965, appellants leased this property to Roy B. Hammett, pursuant to a written lease which contemplated the erection of a building by the lessee. Hammett intended to use the building and the real property in connection with a franchise he was purportedly granted by Hobb's Trailers.

In the fall of 1965, Hammett first contacted Warren Slater, the president of appellee Alaska Metal Buildings, concerning the possibility of purchasing a building to be erected on the premises Hammett had leased from appellant. It is undisputed that on January 6, 1966, Hammett and Slater agreed upon the purchase and sale of a metal building for $9,500. Hammett and Slater also discussed the necessity of a foundation for this building and according to Warren Slater's testimony, it was mutually agreed appellee would provide a foundation for $2,663.[1] As part of this January 6, 1966, letter agreement, it was further provided that "The costs of this work shall be itemized and * * * the actual amounts charged with 10% contractors Overhead and Profit added to the total amounts incurred." Warren Slater testified that the $2,663 contract price was based on the premise that the foundation would be built in the summer of 1966. According to Slater some five days after the January 6, 1966, letter agreement had been entered into, Hammett indicated he wanted the work on the foundation commenced and completed as soon as possible. Since this involved increased costs and construction time resulting from problems inherent in cold weather construction, Hammett agreed, on January 11, 1966, to the following additional provision to the original contract:

It is further understood that when the project costs near the above total cost of $2,663, and it will be necessary to exceed this figure, we will contact you for further authorization to proceed.

In addition to the foregoing evidence given by Warren Slater, Bruce Slater, who was appellee's foreman in charge of construction of the foundation project, testified he was present during the January 1966 conversations which took place between his father and Hammett. According to Bruce Slater, the upshot of these talks was that appellee was to construct the foundation on a cost-plus basis. In his deposition, Hammett took the position that the January 6, 1966, letter calling for construction by appellee of the foundation for a total price of $2,663 constituted his "complete" agreement with Slater. In this same deposition Hammett subsequently admitted, after construction of the foundation had commenced, that he agreed to pay appellee $3,200 to complete the foundation. The evidence showed that appellee began construction of the foundation on January 12, 1966, and finished on February 5, 1966. Shortly after completion of the foundation, Hammett left for Texas to obtain additional financing and thereafter never returned to Alaska. On April 25, 1966, appellee filed a claim of lien on appellants' property in the total amount of $16,379.16. Several of the items which were included in this total amount were subsequently determined to be nonlienable by the trial court in the foreclosure action. In this appeal, appellants contend the trial court erred in failing to make a specific finding as to what was the actual agreement between Hammett, appellants' statutory agent, and appellee. More particularly, appellants argue that the trial court's findings were deficient regarding the price agreed upon for construction of the foundation. Appellants also assert that appellee's commingling of several nonlienable items in its lien claim voided the entire lien and that the trial court committed prejudicial error in not holding appellee's entire lien claim void.

■ We agree with appellants' initial contention that the trial judge had the duty,

1. It was agreed appellee would build the foundation for the 40 foot by 80 foot metal building, as well as a 10 foot by 20 foot addition thereto.

under Civil Rule 52(a), to make sufficiently detailed and explicit findings of fact in order to afford this court a clear understanding of the basis for his decision.[2] We have heretofore recognized and applied this same rule in mechanic's and materialmen's foreclosure actions.[3] Appellants next cite AS 34.35.095 of our statutes which provides that:

A contractor may recover upon a lien filed by him only the amount due to him according to the terms of his contract, after deducting all claims of other persons for work done and materials furnished.

■ On the basis of the text of AS 34.35.095, appellants contend that appellee's lien was limited to the agreed contract price of $2,663. In construing this statute in Clay v. Sandal,[4] this court said:

By statute, the maximum a contractor may establish as a lien can not exceed the amount due to him under the terms of his contract. But there must be a contract with the person from whom the contract lien recovery is sought, or someone privy to him, otherwise the contractor's lien recovery may be limited to the reasonable value of the labor and materials furnished.

Appellee has no quarrel with AS 34.35.095 nor with the reference to this statute in the *Clay* case. Appellee's position is that the trial court's findings of fact and conclusions of law are sufficiently explicit. Appellee contends they demonstrate that the court found Hammett had agreed to a cost-plus contract price for any labor or materials furnished over the original contract price of $2,663. Here we agree with appellee's position. In its findings of fact, the trial court stated, in Finding of Fact VII:

That the plaintiff expended the sum of $2,778.06 for materials for the project

which is fair value for same. That plaintiff's employee Bruce Slater earned the total sum of $918.00 on the project but $96.00 of said amount represents time spent on errands for Hammett and is not a lienable item therefore reducing recoverable amount for Bruce Slater's labor to $822.00. That plaintiff should recover the following amounts expended for the following employees on the job:

| | |
|---|---:|
| Carlson | $ 220.56 |
| Larson | 52.53 |
| Pickens-White | 22.12 |
| Bruce Slater | 822.00 |
| | |
| Total labor | $ 1117.21 |

That plaintiff is entitled to 10% profit on material, labor and sub-contractor Shock's labor in the amount of $583.92. That plaintiff is entitled to a total recovery of $4,479.19 under his lien.

We believe the foregoing shows the trial court resolved the conflict in evidence in regard to the contract issue in appellee's favor by virtue of its implicit acceptance of the Slaters' testimony and rejection of Hammett's deposition testimony. We therefore conclude the trial court's findings of fact and conclusions of law were adequate in regard to the contract amount issue, and additionally were not clearly erroneous in light of our study of the record.

■ We next turn to issues relating to appellee's inclusion of certain claims for labor and material which were subsequently determined to be nonlienable in character. In his conclusions of law, the trial judge stated in part as follows:

Since the lien claim contained several unlienable items plaintiff should recover attorney's fees on an uncontested basis only. *Unlienable items were not of sufficient magnitude, however, to void the lien.* (emphasis added)

---

2. For this proposition appellants cite this court's opinion in Merrill v. Merrill, 368 P.2d 546 (Alaska 1962).

3. Vaara v. Ketchikan Spruce Mills, 432 P.2d 618, 619–623 (Alaska 1967).

4. 369 P.2d 890, 896 (Alaska 1962) (footnote omitted).

The foregoing is the sole reference found in the court's conclusions of law concerning the subject of nonlienable claims. In the findings of fact which were entered by the trial court, the following are the only relevant findings as to nonlienable items:

That the amount due plaintiff as set forth in the lien notice was $16,379.16; that subsequent to the filing of said lien, the plaintiff disposed of the Butler type steel building, thereby reducing the amount of the lien to $6,879.16, no portion of which has been paid.

Additionally, we have heretofore set forth the trial court's findings of fact in paragraph number VII where the court determined that appellee expended the sum of $2,778.06 "for materials for the project which is fair value for same." There it was further found that $96 of Bruce Slater's labor earnings on the foundation project represented "time spent on errands for Hammett and is not a lienable item * *."

Based on the foregoing, we conclude that the case should be remanded for more explicit findings of fact regarding nonlienable claims issues. In Clay v. Sandal [5] and Stephenson v. Ketchikan Spruce Mills, Inc.,[6] we referred to AS 34.35.500 which indicates that our lien statutes are remedial and should be liberally construed.[7] Crucial to the issue presented under discussion is AS 34.35.020(c) which provides that:

The inclusion of nonlienable items in the amount of the claimant's demand or error in the terms and conditions of the contract of employment, if there is a contract of employment, or other error in the lien notice, made in good faith, is not considered material, unless the er-

ror affects the substantial rights of the adverse party, acquired in good faith without notice.[8]

We have heretofore held that the inclusion of nonlienable items does not result in automatic imputation of bad faith. In Clay v. Sandal,[9] we said:

Appellant Wiegert cites Bloom et al. v. McCluskey et al. for the proposition that the mere fact that non-lienable items were included imputed bad faith. While Bloom may have been some support for appellant's argument when it was decided in 1925, it is not now the law of Alaska for the proposition cited. The law is that the inclusion of non-lienable items in the amount of claimant's demand, made in good faith, shall not be deemed material, unless substantial rights of the adverse party acquired in good faith without notice are affected. There is no claim that Sandal acted in bad faith or that he did not include the items in good faith, nor that any substantial right of appellant has been affected by their inclusion.

As we have previously pointed out, nowhere in the trial court's findings of fact or conclusions of law are AS 34.35.020 (c)'s good faith-substantial-rights-of-the-adverse-party criteria mentioned. The only explicit statement which has any possible pertinency to the nonlienable items issue is the single sentence contained in the trial court's conclusions of law where it is stated, "Unlienable items were not of sufficient magnitude * * * to void the lien." It is apparent that under AS 34.-35.020(c) and the *Clay* case the magnitude of the nonlienable items is not the appro-

---

5.  369 P.2d 890, 896 (Alaska 1962).

6.  412 P.2d 496, 498–499 (Alaska 1966).

7.  AS 34.35.500 reads: "The intent of §§ 10—425 of this chapter is remedial and its provisions shall be liberally construed."

8.  Subsection (d) of AS 34.35.020 reads as follows:

    The lien notice and pleadings may be amended at any time before judgment.

If a material statement or averment is omitted or misstated, this is ground for a reasonable delay or continuance to enable opposing parties to meet the amendment, and no non-suit or dismissal may be entertained in the action except upon the merits of the cause.

9.  369 P.2d 890, 894–895 (Alaska 1962) (footnote omitted).

priate test. Here the trial court did not determine whether or not the nonlienable items were included in appellee's lien claim in good faith or otherwise. We, therefore, hold that the case must be remanded to the trial court for determination as to whether or not the $9,500 portion of the lien claim relating to the metal building was made in good faith, and whether any substantial rights of appellants, acquired in good faith without notice, were affected. Additionally, the trial court should resolve similar issues concerning the $96 which was disallowed from the claimed services of Bruce Slater, and the $360.27 portion of the claim for wages of subcontractor Creed Shock which was apparently also disallowed by the trial court.[10] In regard to the good faith issues, the burden is upon appellee to show that each nonlienable item was included in its lien claim in good faith.

Appellants' final contention is that the inclusion of nonlienable items in appellee's lien claim "even if not willful" voided the entire claim because the claim was stated for a lump sum and was not segregated. Paragraph number 3 of appellee's "Claim of Lien for Materials and Labor" reads: "The lien claimed is for Steel Building materials, concrete items, labor, fuel oil, temporary power, and miscellaneous items." Paragraph number 5 of the same document states:

> The value of the Labor performed or Materials furnished was SIXTEEN THOUSAND THREE HUNDRED SEVENTY NINE and 16/100 ($16,379.16) DOLLARS: after deducting all just

credits and offsets, amounting to None Dollars, Plaintiff, or Claimant, claims a lien upon the aforesaid property for the sum of $16,379.16 which amount is just, owing, and correct.[11]

It is thus apparent that the lien claim was not segregated and that actual segregation of the nonlienable items was achieved through extrinsic evidence received at trial.

In resolving the question of whether the inclusion of nonlienable items in an unsegregated lien claim notice voids the entire lien, we believe the following factors should be taken into account. First, we have already alluded to the legislature's express policy statement that our lien statutes are remedial in character and should receive a liberal construction to effectuate this purpose.[12] We also believe the provisions of AS 34.35.020 are relevant here. Subsection (b) of this statute provides:

> Substantial compliance with the law relating to the contents of the lien notice is considered sufficient, if the notice satisfactorily shows the name of the claimant, the amount of his demand, the time of his employment, the property sought to be charged with the lien sufficient for identification and the name of the owner or reputed owner of the property.[13]

Further, we have already alluded to the text of subsection (c) of AS 34.35.020 which provides in part that:

> The inclusion of nonlienable items in the amount of the claimant's demand * * * or other error in the lien notice, made in good faith, is not considered

10. On remand there is no necessity to determine any question as to appellee's good faith concerning an alleged $160 overcharge for cement. The evidence was conflicting on this issue and the court's findings disclose no overcharge was shown.

11. In its pre-trial memorandum, appellee made the following statement:
  Subsequent to the filing of plaintiff's Claim of Lien, defendant Hammett refused delivery of a star steel building which was being held by the company at its warehouse in Oklahoma City, Oklahoma. In order to minimize damages that might or could accrue, plaintiff ob-

tained permission from the company to resell the building for the sum of $9,-500.00. Therefore, plaintiff's Claim of Lien, after deducting storage of $120.-00, should be reduced by $9,380.00, thus leaving a balance due plaintiff of $6,-999.16.

12. Note 7 supra.

13. Subsection (a) of AS 34.35.020 reads:
  No mistake in formality or lack of statement in the lien notice or the pleadings is ground for dismissal or unnecessary delay in an action to foreclose a lien.

material, unless the error affects the substantial rights of the adverse party, acquired in good faith without notice.[14]

Upon analysis of the foregoing portions of our lien law, we conclude that the inclusion of nonlienable items in an unsegregated notice of claim of lien does not automatically necessitate the voiding of claimant's entire lien.[15] Here the record shows the lien notice meets the criteria of AS 34.35.020(b) and under AS 34.35.020(d), the lien notice could have been amended at any time prior to judgment to reflect the extrinsic evidence, introduced at trial, which itemized and segregated appellee's initial lump sum lien claim. On the other hand, since we have already determined a remand is in order to permit the trial court to make additional findings of fact on the issues of appellee's good faith and materiality in connection with certain nonlienable items, we deem it appropriate to also remand this aspect of the case for additional findings. Upon remand the trial court is to determine whether the inclusion of nonlienable items in appellee's unsegregated lien claim was done in good faith, and whether any substantial rights of appellants, acquired in good faith without notice, were affected thereby. Only if the trial court determines the nonlienable items were included in the unsegregated claim as a result of appellee's bad faith, or that substantial rights of appellants were affected by such error, would appellee's entire claim be voidable and subject to dismissal.[16]

The case is remanded to the superior court for further proceedings in accordance with this opinion.

14. Also relevant is subsection (d) of AS 34.35.020 which reads:

The lien notice and pleadings may be amended at any time before judgment. If a material statement * * * is omitted or misstated, this is ground for a reasonable delay or continuance to enable opposing parties to meet the amendment, and no non-suit or dismissal may be entertained in the action except upon the merits of the cause.

15. In Clay v. Sandal, 369 P.2d 890, 895 (Alaska 1962), we did not pass directly on the question presented in the case at bar. There we said:

Appellants argue that the allegedly non-lienable items were comminged with lienable items and this caused the entire lien to fall. Of course, we have already decided that the two items were lienable. But even if they were nonlienable there would be no merit to appellants' argument. The two items were not commingled, or joined or mixed, with other items of the claim. They were set out in the claim of lien as separate numbered items with the amount claimed for each item individually shown.

See also Pioneer Mining Co. v. Delamotte, 185 F. 752, 755 (9th Cir. 1911), where it was stated:

Mechanics' lien statutes are to be liberally construed, with a view to effect substantial justice, and the fact that the lien claimant includes in his claim an item of his services for which the law gives him no lien will not defeat the lien if due to an honest mistake, and his lien in such a case may be enforced pro tanto if the true amount for which he is entitled to a lien may be segregated from the remainder.

16. In reaching this result we decline to follow the Oregon authorities which appellants argue are controlling. The Oregon authorities are summarized in Galen, Mechanics' Liens In Oregon, 29 Ore.L. Rev. 308, 342 (1950) (footnotes omitted):

Often a lienor will include in his claim a demand for payment for items which are not lienable. If the demand is made for a lump sum covering both lienable and nonlienable items mingled together, the court will not allow the lienor, by extrinsic evidence, to apportion the sum demanded between the lienable and nonlienable items, but will hold the entire claim invalid. However, where the claim contains an itemized statement, in which the items are listed separately, and where the nonlienable items may be stricken without resorting to extrinsic evidence, the court will strike out those items, and will allow a lien for the balance.