CRIBB v. CASKEY et al.

(Fourth Division.    Fairbanks.    October 17, 1910.)

No. 1081.

1. MECHANICS' LIENS (§ 72*)—EMPLOYMENT BY OWNER OR AGENT.
    To bind the building under a mechanic's lien for labor and materials furnished, there must be an employment by the owner of the building, or his authorized agent. To constitute the contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration or repair, in whole or in part, of any building, the statutory agent of the owner, such person must have been employed directly or indirectly at the instance of the owner or his conventional agent.

    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 86; Dec. Dig. § 72.*]

2. MECHANICS' LIENS (§ 64*)—IMPROVEMENT BY ONE NOT THE OWNER.
    The owner entered into a contract to sell his lot and building. The contract was recorded. The intending purchaser caused improvements to be made to the buildings. The owner posted notices of warning under the lien law. The intending purchasers did not pay for either the property or the improvements, and those who furnished material to be used in the improvement filed liens. *Held*, the work was not done at the instance of the owner or his agent, and the liens were discharged.

    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 81; Dec. Dig. § 64.*]

The facts, so far as the issues in this case are concerned, show that the plaintiff and other lien claimants, his assignors, furnished labor and material for the reconstruction of a certain frame building, during the month of January, 1908, situate on a lot owned at that time by the defendant Caskey, but under option to Martin Moran, C. A. Wedgewood, and Frank

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

Cullen, trustees for the Western Federation of Miners, who were then in possession and occupying the lot and building.

The defendant Caskey entered into a written option, on November 7, 1907, to sell the lot and building in question, to the defendants above mentioned, for the sum of $5,000, $1,000 in cash and $4,000 on or before the 1st day of August, 1908. The following agreed statement of facts was submitted in the case, in addition to oral testimony: "Upon default, the defendant Caskey re-entered, under the terms of said option, and ever since has been and now is the owner and in the possession of the lot and building in question; that since November 1, 1906, J. H. Caskey has been continuously and now is the sole owner of the lot of ground described in the complaint; that up to November 7, 1907, J. H. Caskey was in the exclusive possession of said lot of ground and of the building there situate thereon; that since August 2, 1908, J. H. Caskey has been continuously and now is in possession of said lot of ground and the building situate thereon; that since August 2, 1908, J. H. Caskey has ascertained and admits that the material described in the several liens set forth in the complaint entered into the additions made to the building situate on said lot on November 7, 1907, and that the labor set forth in said liens was performed upon the building situate upon said lot, at the times in the said liens set forth, and that the value of the material furnished and the labor performed is correctly stated in said liens; that on December 20, 1907, J. H. Caskey posted notices in writing in conspicuous places upon said lot and upon the building then situate thereon, of which a copy is set forth in his answer; that each one of the lien claimants named in the three liens set forth in the complaint had actual knowledge of the posting of said notices and the contents thereof, prior to the time any of them furnished any of the material or performed any of the labor described in said lien; that the option agreement set forth in the answer of J. H. Caskey, dated November 7, 1907, between J. Harmon Caskey and A. C. Wedgewood, Martin Moran, and Frank Cullen, was duly executed and acknowledged by the parties thereto and recorded at the time and place in said answer

stated, and Exhibit A, being a part of said answer, is a true copy thereof.

John F. Dillon, of Fairbanks, for plaintiff.

A. R. Heilig, of Fairbanks, for defendants.

OVERFIELD, District Judge. This is an action to foreclose a mechanic's lien for labor performed and materials furnished in the reconstruction of a certain frame building.

From the facts admitted and those established without contradiction by the evidence in this case, it is conclusively shown: That the defendant owned a lot on which was situate the frame building, one story in height, 43x50 feet in dimensions, of the cost value of about $3,000. That on March 7, 1907, prior to the time the alleged services and materials were furnished, the defendant gave an option on the property herein to Wedgewood, Moran, and Cullen, trustees, and receiving $1,-000 in cash, the further consideration of $4,000 to be paid on or before the 1st day of August, 1908; the option being placed of record in the Fairbanks recording precinct November 27, 1907.

The evidence is uncontradicted that the lien claimants had actual knowledge of the posting in conspicuous places of the notices posted on December 20, 1907, by Caskey, both on the lot and building, which was prior to the time the lien claimants furnished labor or material, as claimed in their lien. It was also conceded that, under the facts in this case, no lien can be legally claimed by the plaintiff against the ground on which the building is situate.

The single question of law is then presented, admitting that the evidence does not sustain the allegation of the agency of one Steffenson, connecting him with the defendant: Does the lien attach in this action to the building on which the labor was performed and materials furnished? This question was squarely before the district court of the Second judicial division, Alaska, in the case of Russell v. Hayner, 130 Fed. 90, 64 C. C. A. 424, and upon appeal the lower court's decision was affirmed in an opinion by Justice Hawley, in the Circuit Court of Appeals, Ninth Circuit. In that case the first point

discussed was as to the sufficiency of the allegation in the complaint, connecting the lien claimants with the owners of the lot and building. The building had been altered and repaired by the lienors, under contract with one Helen Hayner, who held the lot and building and was in possession of the same at the time, under an option to purchase from the owners, Leo Bartz and Charles Seipel. There was no allegation in the complaint that the lien claimants furnished material or labor for the owners of the lot and building, but that they were furnished for Helen Hayner. After discussing the necessity of the allegation by the lien claimants and connecting them with the owners of the building under contract for the erection, alteration, and repairs, the opinion says:

"But, even if it could be held that the allegation as to the ownership of the building was sufficient, still the complaint would be defective, because the statement in the lien that Leo Bartz and Charles Seipel are the names of the owners of the lot of land upon which the building was erected, and that Helen F. Hayner was the name of the party who was under an agreement to purchase, and that she was the person who entered into an agreement with the person for the erection of the building, is not sufficient to constitute a compliance with the provisions of the Alaska Code. * * * The mere fact the appellants (the lien claimants) built the structure at the instance of Hayner, who was in possession of the land under a contract of purchase with the owners, is not of itself sufficient to constitute a valid lien upon the building. In order to bring the case within the provisions of section 262, it must be alleged and proved that the work or labor was done 'at the instance of the owner of the building, or his agent.' * * * To authorize a lien under the provisions of this section, there must be an employment by the owner of the building, or his authorized agent; and the employment of the contractors by Helen F. Hayner, who was occupying the land under contract of purchase, does not constitute the employment contemplated by this provision of the Code."

The opinion then continues to discuss the liabilities of the owner under section 265 of the Alaska Civil Code. Assuming they were not parties to the contract, yet having actual knowledge of the employment and materials furnished, the court says:

"In order to bring the case within the provisions of section 265 of the Alaska Code, it was necessary for the appellants (the lien claimants) to have alleged in the complaint or lien that the building was constructed upon the land, 'with the knowledge of the owner

or person having or claiming any interest therein,' for it is only in such cases that this section provides that it shall be held to have been constructed 'at the instance of such owner or person or persons having or claiming any interest therein,' unless the owner gives the notice therein prescribed, and this notice is not required to be given until after the owner shall have obtained 'knowledge of the construction' of the building."

To bind the building under a mechanic's lien for labor and materials furnished, there must be an employment by the owner of the building, or his authorized agent; to constitute the contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration, or repair, in whole or in part, of any building, the statutory agent of the owner, such person must have been employed directly or indirectly at the instance of the owner, or his conventional agent. Gould v. Wise, 18 Nev. 253, 3 Pac. 90; Cross v. Tscharnig, 27 Or. 49, 39 Pac. 540; Litherland v. Morton, 54 Or. 71, 100 Pac. 1.

"At the instance" of the owner signifies at the motion of; consent; at least, knowledge of. The defendant Caskey admits he knew when the option was given that the parties intended to make some changes or repairs on the building, and while he did not forbid this, and probably acquiesced, and it might be inferred that he intended that the work should be done and paid for by the defendants, then in possession of the property and who contracted for the work, yet, the moment it became apparent to him that the actual remodeling of the building was about to take place, he immediately availed himself of the provisions under section 265 of the Alaska Code, and posted notices, as therein provided, giving immediate notice to the plaintiff that he would not be responsible.

The plaintiff and his assignors then had constructive notice from the records in the recorder's office, at Fairbanks, that the defendant Caskey had optioned the property, as well as the actual notice above mentioned; yet, under all these circumstances, he persistently pursued his efforts, and now would hold the building of the defendant liable. Such a construction cannot be legally maintained under the statute, nor can it be based on any equities known to this court.

Counsel for plaintiff contends in his brief that the building, as altered and enlarged, should be held under the lien, citing many cases, but the court is unable to find a single authority to sustain such a contention on the facts before the court in this action. It is true that cases are numerous where buildings have been held under liens similar to the ones filed in this action, under statutes whose provisions are practically the same as ours, but in each instance two distinct features will be found, not present here: First, that the structures on which the lien is sought to be imposed has been added to the realty during the term of the option or lease, in other words, that it is not the mere alteration or repair, but either a new building or such alteration of another, having no particular value so as to make it, to all intents and purposes, new. In either event, it is an addition to the realty as it existed when optioned or leased, and permitting a lienor to reap the fruits of his labors, and not in the least impair the value of the building or property when returned to the optioner or lessor; and, second, that the character of the building or structure, machinery, etc., permits its being severed from the realty.

While considerable alteration was made in the structure owned by the defendant, during the time it was held under the option, yet the fact remains that it cost and was worth about $3,000 at the time the alteration or reconstruction began, and though enlarged from a one-story building, 43x50 feet, to a two-story building, and an addition made of the same height, 25x43 feet, practically reconstructing the former into a new building, so far as appearances are concerned, still the evidence shows that the materials formerly in the building still remained, though distributed throughout the altered structure; some in their original position and others now in the second story which were formerly in the first story. It is suggested that to hold such a building not subject to a lien for labor or materials furnished in its reconstruction would allow the owners to commit a fraud on the lienors, by the owners entering into an agreement with their lessors, or to a person holding the property under an option, to erect or reconstruct a build-

ing and then cut off the lienors' rights by posting notices, as required under section 265 of our Code. In this case no fraud is either alleged or intimated nor deception practiced.

Nearly all human affairs may be made the subject of fraud, but for that reason courts are not justified in anticipating fraud and refusing to apply the statutes to the conditions within its terms, when shown. There is no evidence before the court that this building can be severed from the realty.

Let findings of fact and conclusions of law be prepared accordingly.