## NOBLE et al. v. GUSTAFSON.

### (Circuit Court of Appeals, Ninth Circuit. March 3, 1913.)

### No. 2,170.

MINES AND MINERALS (§ 112*)—CONSTRUCTION AND DEVELOPMENT—LIENS—STATUTES.

Civ. Code Alaska, § 262 (1 Fed. Stat. Ann. p. 282), giving a lien to persons performing labor on the construction, development, alteration or repair of any building, flume, mine, tunnel, aqueduct, or other structure, limits the lien to work done in the development or improvement of a mine; and hence did not confer a lien for sluicing up the dump for extracting gold therefrom, which was the ordinary work of a miner in the operation of a placer claim, having no relation to the development or improvement of the mine.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 233–235; Dec. Dig. § 112.*]

Appeal from the District Court of the United States for the Fourth Division of the District of Alaska; Peter D. Overfield, Judge.

Suit by Algot Gustafson against Jesse Noble and others. Decree for

complainant, and defendants appeal. Reversed and remanded, with directions.

F. J. Kierce and Walter Christie, both of San Francisco, Cal., and John L. McGinn and Arthur Frame, both of Fairbanks, Alaska, for appellants.

T. C. West, F. De Journel, and Joseph T. Curley, all of San Francisco, Cal., and Guy B. Erwin, of Fairbanks, Alaska, for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is a suit to foreclose several mechanics' liens claimed by appellee and others upon a certain mine and premises known as "Creek Placer Mining Claim No. 2 above Discovery on Wolf Creek, a Tributary of Cleary Creek," in Fairbanks recording district, Alaska. In each count of the complaint it is alleged that said work and labor performed upon the said mine and premises was performed in running tunnels, opening cross-cuts, drifting out, excavating, and hoisting gold-bearing gravel, building flumes and ditches, and timbering shafts upon said mine and premises, for the development and improvement thereof; and the claims of lien, taking one as an example, are "for work and labor done and performed * * * upon said property, as miner and laborer in digging tunnel, running cross-cuts, drifting out, excavating and hoisting gold-bearing gravels, building flumes and ditches, and timbering shafts in the improvement, opening up, development and working of same." The various statements of claim show that the claimants commenced the performance of the work on the 29th day of April or 1st or 16th of May, 1911, and continued up to the 26th of May or the 1st to the 4th of June. Wright's claim is an exception to this, as his runs from April 1st to June 9, 1911; he giving credit for $150 paid. The complaint avers, taking the Gustafson claim as an example, that between the 1st day of May, 1911, and the 1st day of June, 1911, Gustafson performed 29½ days' work and labor upon that certain mine, etc., and, further, that he commenced to perform work and labor upon said mine and premises on the 1st day of May, 1911, and ceased to work and labor thereupon on the 1st day of June, 1911.

The testimony shows that generally the work and labor done and performed by claimants, except as to one or two who were employed as cooks, was in sluicing up the dump for extracting the gold therefrom. Some of these men worked ranging from four to six or seven days in repairing a ditch used in connection with the sluicing operations. Thus Peterson worked four days in making such repairs, Anderson five or six days, and Strass seven days. The witnesses were not sure as to the time. The dump came in part from a shaft and tunnels which were sunk and drifted in March, the work continuing up to April, 1911, possibly beyond, but not later than the latter part of April, and in part from other excavations and tunneling carried on in the winter; the larger part coming from the latter source. Now, it is urged that the work done and performed was not the kind or character of work and labor for which the claimants were entitled to claim liens upon the mine and premises under the statute.

The statute gives a lien to laborers and other persons performing labor upon the construction, development, alteration, or repair of any building, flume, mine, tunnel, aqueduct, or other structure. Section 262, Civil Code of Alaska. See 1 Fed. Stats. Annotated, p. 282. This statute has been construed by this court, and limits the lien of the miner to work done in the development or improvement of a mine. Pioneer Mining Co. v. Delamotte, 185 Fed. 752, 108 C. C. A. 90. And it was further held that it does not include the ordinary work of a miner in the operation of a placer claim, having no relation to the development or improvement of the mine. That the work shown to have been performed by claimants does not bring them within the purposes of the act is clearly apparent. The dump consists of the pay dirt extracted from the mine. It is thrown out from the shafts and tunnels as the excavations are carried on, and lies where thrown until the season is opportune for sluicing it up. This is done by the use of running water for washing out and separating the gold from the earth and gravel as the dump is thawed out. Such work is simply a mining process for extracting the gold from the mass, and is nothing more nor less than a mining operation, or a working of the mine, as distinguished from development operations, or work with a view to exploration or development. True, as indicated in the above case, sluicing and extracting of the gold may, in a conceivable case, be incidental to a development of the mine, but it is not shown to be such here. Indeed, the contrary appears, as the earth removed through the process of sinking the shaft and tunneling was all in the dump for a time at least prior to the time when the sluicing began, and we are to infer that it was only awaiting the process of separation. In other words, the mining work, namely, the sinking of the shafts, the running of the tunnels and the development work in general had ceased, and the work of extracting the gold by the sluicing method was not a work incidental to the development of the mine or the alteration or repair of any building, flume, or tunnel in connection therewith. The removal of the dump served no purpose whatever in developing or improving the mine, and, except for the washing out and extraction of the gold, it probably would never have been further disturbed.

While mechanic's lien statutes are to be liberally construed, so that their purpose may not be frustrated, and with a view to effecting substantial justice, yet, unless the labor performed for which the lien is claimed is such as comes within the contemplation of the statute, there can be no valid lien. The allegations of the complaint and the statements of lien show sufficient to bring the liens in question within the act, but the proofs wholly fail to support either, except as it pertains to a small amount of work done by some of the claimants upon the ditch or flume in the way of repairs. And as to this, the labor which is subject to lien is so commingled with that which is not that it cannot be satisfactorily segregated. The liens themselves are therefore void.

Such being our conclusion, the decree of the District Court must be reversed, and the cause will be remanded, with directions to dismiss the complaint. The appellants are entitled to their costs in both courts.