John R. VAARA, Appellant,

v.

KETCHIKAN SPRUCE MILLS, Appellee.

No. 829.

Supreme Court of Alaska.

Oct. 30, 1967.

Lloyd I. Hoppner, of Rice & Hoppner, Fairbanks, for appellant.

No appearance for appellee.

## OPINION

Before NESBETT, C. J., DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Involved in this appeal is construction of our mechanic's and materialmen's statutes.[1] The superior court entered a judgment in favor of appellee Ketchikan Spruce Mills establishing a materialmen's lien in its behalf and decreeing that the lien be foreclosed against appellant Vaara's interest in certain real property. We have concluded that the case must be remanded to the trial court for more detailed and explicit findings of fact and conclusions of law.

The crux of this litigation concerns the applicability and interpretation of AS 34.-35.065(a) and (b) of our lien laws. Under this statute, before an owner's interest in land can be subjected to a statutory materialmen's lien the owner must have had "knowledge" of the construction.[2]

The evidence presented at the trial shows the following: The real property in question was conveyed to appellant on February 24, 1964.[3] Prior to April 24, 1964, appellant engaged Jewel Jolley, a salesman for Sullivan Realty, to find a buyer for the property.[4] Thereafter, Jolley obtained a $500 check from Richard Fuller as a down payment on an agreed $6,500 purchase price for the property.[5] As part of this transaction Jolley obtained Fuller's signature to an "Earnest Money Receipt," and then mailed the partially executed document to appellant for his approval and signature.[6]

This "Earnest Money Receipt" in part provided that "Seller will post property & record copies of non-liability notices and post copies of same on premises."[7] According to both Jolley's testimony and the text of the "Earnest Money Receipt," the contemplated sale to Fuller included "The lot, full concrete basement and other minor improvements and some materials like logs to put up a log house."[8] When

---

1. See generally AS 34.35.050 and AS 34.-35.120.

2. AS 34.35.065(a) reads:
   A building or improvement mentioned in § 50 of this chapter constructed with the knowledge of the owner of the land or the person having or claiming an interest in the land is considered to be constructed at the instance of the owner or person having or claiming the interest.
   AS 34.35.050 provides for the establishment of a materialmen's lien. This statute reads in part:
   A person or firm * * * furnishing material for the construction of, or furnishing material for the construction, alteration, or repair, either in whole or in part of a building * * * has a lien on it for the work done or material furnished at the instance of the owner of the building or other improvement, or his agent.

3. Appellant did not record this warranty deed until November 18, 1965.

4. The property is described as "Lot Six (6), Block Two (2) of the LEMETA SUBDIVISION of the Bridget O'Connor Homestead."
   Jolley testified that appellant authorized him "to sell the property" and that he was not given any other authority. . .

5. The check was made payable to Sullivan Realty.

6. At the time of the Jolley-Fuller negotiations, appellant was living in the State of Washington.

7. This language was typed in the body of the "Earnest Money Receipt." The bulk of the remaining portions of the instrument were in printed form.
   The documents also provided that "A reasonable time not exceeding 90 days is to be allowed for the execution of said deed, mortgage, or contract, from the date hereof."

8. By the terms of the "Earnest Money Receipt," the sale was to include "Lot 6, Block 2, Lemeta. Including all in-

asked by appellee's counsel whether it was understood that Fuller was going to complete the existing structure, Jolley testified:

> Well there wasn't necessarily any * * * agreement to that effect. The * * * buyer was supposed to buy the property—he put up a $500 check and he was supposed to pay the balance in cash and—within 90 days.[9]

Subsequent to the execution of the "Earnest Money Receipt," Fuller entered into an oral contract with appellee Ketchikan Spruce for the delivery of building materials which were delivered to and used by Fuller to make improvements upon the existing structure on the lot in question.[10] On July 22, 1965, appellee Ketchikan filed a mechanic's and materialmen's lien against the subject property in the amount of $1,046.68 for labor and materials furnished.[11]

Concerning the crucial knowledge issue, the record discloses the following: Appellee does not assert that appellant played any part in the ordering of the materials which were used by Fuller. During the period in question (and in particular between May 10 and May 12, 1965), appellant was in Seattle, Washington. Appellant's testimony in brief is that until he was served with

process in connection with this litigation he had no knowledge of the delivery to his real property of any materials and supplies by appellee.[12] Appellant's agent, Mr. Jolley, testified that subsequent to April 24, 1965, he had occasion to visit the premises. Approximately ten days after April 24, 1965, he went to appellant's property and at that time did not "observe any construction work being performed on this house." About one month later, he again went to the site and this time observed that "there was construction * * * quite a bit had been done."[13] Jolley also testified that he never notified appellant that materials "had been purchased by Mr. Fuller or that materials had been delivered to the premises of Lot 6 Block 2 Lemeta." Jolley further stated that he did not notify appellant "that construction was taking place on this house prior to * * * May 10th or May 12th of 1965."

Essentially on the basis of the foregoing evidence, the superior court found in appellee's favor. The only finding of the trial court which pertains to the "knowledge" requirements of AS 34.35.065(a) and (b) [14] reads as follows:

> That the defendant, John R. Vaara, did not avail himself of the protections

ventoried buildings material [sic] on site."

9. The sale to Fuller was never consummated because, according to Jolley's testimony, "the bank wouldn't honor the check, so as far as I was concerned the earnest money agreement * * * wasn't any good * * *."

10. The delivery of the materials took place between May 10 and May 12, 1965.

11. Appellant does not contest the value of the materials and labor claimed nor does he dispute that these items were delivered and rendered to Fuller in connection wtih construction of the premises in question. It is also undisputed that in selling the materials to Fuller, appellee Ketchikan Spruce thought that Fuller was the owner of the premises in question. Appellee did not make a title search prior to delivery of any materials to the site.

12. Appellee filed suit in the superior court on September 13, 1965. Appellant was personally served with copies of the summons, notice to absent defendant, and complaint, in Orange County, California, on November 16, 1965.

13. These visits were motivated by Jolley's desire to collect the $500 down payment from Fuller.

14. In the event the owner has the requisite "knowledge" under AS 34.35.065(a), he can still avoid the impact of the lien upon his real property by complying with the notice of nonresponsibility section of AS 34.35.065(b). This subsection provides:
> The interest owned or claimed is subject to a lien filed in accordance with § 50—120 of this chapter, unless (1) the owner or person having or claiming an interest in the land gives notice within three days after he obtains knowledge of the construction, alteration or repair that he will not be responsible for it, by posting a notice to

of the lien laws of our State by posting the property as required by law, or by posting the property within three days after learning of the construction and improvements on the above described property. And that no other person or persons have a claim or lien on said property described hereinabove superior and prior to that of the plaintiff.

■ On the basis of our study of the record we are of the opinion that there is substantial evidence in the record to support the conclusion that appellant did not at any pertinent time post the premises with notices of nonresponsibility. On the other hand, we are not informed as to the factual basis of, or legal ground upon which

the superior court determined that appellant had the requisite "knowledge" of Fuller's construction under AS 34.35.065(a) and (b).[15] On the state of the record before us, it is not apparent what rule of law the superior court applied in reaching its conclusion that appellant possessed the necessary knowledge of Fuller's construction.

Rather early in our precedents it was established that the landowner must have actual knowledge of the construction before his interest could be subjected to a materialmen's lien.[16] As yet undetermined in this jurisdiction is whether knowledge of intended construction would be sufficient to bring into operation the provisions of AS 34.35.065(a) and (b).[17] We

that effect in writing in some conspicuous place upon the land or upon the building or other improvement located on the land; (2) the notice is signed by him in the presence of two attesting witnesses or acknowledged by him before a notary public; (3) the posting of notice is attested to by a witness; and (4) an attested or notarized copy of the notice is recorded with the recorder of the recording district in which the land, building or other improvement is located within three days after the posting of the notice.

15. In Patrick v. Sedwick, 413 P.2d 169, 174 (Alaska 1966), we cited our decision in Merrill v. Merrill, 368 P.2d 546, 548 (Alaska 1962), where we said that:
[U]nder Rule 52(a), it is the duty of the trial court by sufficiently detailed and explicit findings 'to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'

16. See Russell v. Hayner, 130 F. 90 (9th Cir. 1904) and Cribb v. Caskey, 4 Alaska 250, 254 (D.C.Alaska 1910), both of which were decided under statutory predecessors substantially similar to AS 34.35.050 and AS 34.35.065(a).
Our mechanic's lien laws were derived from those of Oregon. In Gabriel Powder & Supply Co. v. Thompson, 163 Or. 623, 97 P.2d 182, 184 (1939), the Oregon court said the following in regard to its mechanic's lien laws:
It is incumbent upon the lien claimant to show knowledge of the 'con-

struction, alteration, or repair' on the part of the owner. After knowledge has thus been established, the burden then rests upon the owner to show that the notice was posted within the statutory period.

17. As to whether knowledge of intended construction will suffice, it is stated in Annot., 123 A.L.R. 7, 45 (1939) that:
Whether or not knowledge on the part of the owner of land or a claimant of an interest therein that the person in the occupancy of the premises intends to make improvements thereon is such knowledge of the improvements that his failure to give or post a notice of nonresponsibility within the prescribed period after his acquisition of such knowledge will result in the attachment of a lien against his interest in the property depends primarily upon the wording of the controlling statute. Some statutes require the posting of a notice within a prescribed period after the owner receives knowledge of construction on or repair of the property and others require such a notice after the owner receives knowledge of construction or repair or intended construction or repair, and the view is generally taken that, under the first type of statute, knowledge of intended improvements is insufficient to charge the owner with the necessity of giving notice in order to prevent the attachment of a lien against his interest in the land, while under the second type of statute such knowledge is, of course, sufficient to charge the owner.

are not informed as to whether the trial judge decided that appellant Vaara had actual knowledge of Fuller's construction, or of Fuller's intention to commence construction on the premises.[18]

A third approach to the "knowledge" issue in this litigation is suggested by Labay v. Northern Mining & Trading Co.[19] In that case Judge Tucker said in part:

It may be true that actual or positive knowledge is not shown by the evidence to have been brought home to the defendant company, but in our view of the law and of section 694 that is not necessary. Such a construction of the statute is too narrow. Knowledge in a legal sense may be positive or implied. The implication of knowledge arises when the party to be charged is shown to have had knowl-

edge of such facts and circumstances as would lead him by the exercise of due diligence to a knowledge of the principal fact. This is the general rule especially applicable to the case here.

Again we are uncertain as to whether the trial court adopted a rule of law analogous to Judge Tucker's reasoning in the Labay case, and therefore concluded that AS 34.35.065's requirements were met because appellant possessed such knowledge as would have put a reasonable man on inquiry.[20]

Another unanswered aspect of this issue concerns knowledge acquired by appellant's agent, Mr. Jolley. From the findings of fact and conclusions of law we cannot tell whether the trial judge imputed to appellant the knowledge of construction which

18. As has been pointed out, AS 34.35.065 (b) reads "knowledge of the construction, alteration or repair."

Under California's lien statute, Code Civ.Proc. § 1183.1(b) which reads in part "within 10 days after he shall have obtained knowledge of such construction * * *." it has been held that the owner's knowledge of intended construction is insufficient. Arthur B. Siri, Inc. v. Bridges, 189 Cal.App.2d 599, 11 Cal.Rptr. 322 (1961); Hayward Lumber & Inv. Co. v. Orondo Mines, 34 Cal.App.2d 697, 94 P.2d 380 (1939).

19. 5 Alaska 134, 137 (D.C.Alaska 1914).

20. At the conclusion of the trial, the trial judge made the following oral comments in the course of announcing his decision: Well I think that the defendant could have also protected himself by filing a notice of non-responsibility under the statute. And I think that that's really the key to this; that there are at least two pertinent times that he could have filed a notice of non-responsibility and protected himself under the statute, and that would have been 90 days after the earnest money receipt was executed between Mr. Vaara and Mr. Fuller, 90 days being the reasonable time to be allowed for the execution of said deed. At that he would not be selling this property and could have protected himself by posting a notice of non-responsibility on the property. But even if he hadn't done that, that—I think as Mr. Miller has indicated and this Court would believe that had he filed it within

3 days after the filing of the complaint or service of the summons and complaint on him * * *.

As to whether the posting by appellant of notices of nonresponsibility after he had been served with copies of the summons and complaint could have affected the merits of this case, it was stated in Johnson v. Butler, 7 Alberta L.R. 427, 22 D.L.R. 347 (1915), Annot., 123 A.L.R. 7, 45–46, that:

The two-fold purpose of the section is obvious. It is to give to a contractor, who otherwise might have the mistaken idea that he was doing the work in hand for the owner of the land, notice to the contrary so that he may, with his eyes open to the facts, elect whether or not he will proceed with it on the personal liability of him by whom he is employed, and at the same time to work a statutory estoppel against an owner who stands by while the work is being done to his knowledge, and says nothing. It surely never was the intention to make necessary the posting of such a notice by an owner to whom knowledge of the construction comes only after its completion. * * * It might happen that the first knowledge that the work claimed for was done might come to an owner through the service upon him of process for the enforcement of the lien. How absurd it would be to say in such a case that unless he, within three days after such service, posted the notice called for by the section, it must be held that the work was done at his request.

Jolley obtained approximately forty days after April 24. Nor do we know whether the trial court viewed Jolley's agency as being general or limited in scope.[21]

■ Before we can make a proper appellate adjudication of the merits of the case, we consider it essential that the trial judge articulate in his findings of fact the factual basis of appellant's knowledge under AS 34.35.065. We also consider it important that the trial judge's conclusions of law be expanded to reflect what rule or rules of law he relied upon for his conclusion that appellee's lien should attach to appellant's interest in the real property (in other words, the ground upon which appellant was held to have had knowledge).

The case is remanded for further proceedings not inconsistent with the foregoing.[22]

21. See generally Annot., 123 A.L.R. 7, 52 (1939); Sandberg v. Palm, 53 Minn. 252, 54 N.W. 1109 (1893).

22. Pursuant to our remand, the trial judge is empowered, if he so determines, to hear additional evidence or order a new trial. In the event the case is again appealed to this court, it is suggested that appellee Ketchikan Spruce participate in the appellate proceedings. In our view there are potential questions of first impression concerning our mechanic's and materialmen's lien laws which are deserving of adversary presentation.