LAKLOEY, INC., Appellant,

v.

Jeffery BALLEK, White Eagle
Construction, and White
Eagle, Inc., Appellees.

No. S–12961.

Supreme Court of Alaska.

July 10, 2009.

John J. Connors, Law Office of John J. Connors, P.C., Fairbanks, for Appellant.

John J. Burns, Borgeson & Burns, P.C., Fairbanks, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I.  INTRODUCTION

Alaska's mechanic's lien statutes allow a lessor of construction equipment to lien real property if its equipment is used under agreement with the property owner or the owner's agent "for the construction, alteration, or repair of a building or improvement" on the property.[1]  In this case a landscaper purchased fill dirt from a construction company and rented heavy machinery from an equipment lessor to remove and transport the dirt from the construction company's property.  The landscaper did not pay for the equipment rental, and the lessor recorded a lien against the property on which the fill dirt had been located.  The construction company sued to expunge the lien.  The superior court found in favor of the construc-

tion company, declaring the lien void and awarding the construction company full reasonable attorney's fees under the mechanic's lien statutes.  The lessor appeals.  We affirm the rulings because the lessor's equipment was not used to perform lienable work on the property and because the court did not abuse its discretion in determining the amount of attorney's fees awarded under the statutes.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

White Eagle, Inc. owned property in North Pole on which it intended to build condominiums.  Three pits were excavated for foundations, and the dirt removed from the pits was piled up on White Eagle's property.  The dirt pile extended onto an adjacent state right-of-way, but the state never contacted White Eagle about this encroachment.

In September 2006 Charles Yingst, the owner of a landscaping business, contacted Jeffrey Ballek, the president of White Eagle, about purchasing some of the dirt for his landscaping projects.  Yingst's landscaping projects did not involve Ballek or White Eagle.  Ballek and Yingst agreed that Yingst would purchase dirt at one dollar per yard and would use his own equipment and personnel to load and move the dirt.

Yingst rented a loader from Lakloey, Inc.  The rental agreement did not mention Ballek, White Eagle, or White Eagle's property; it specified only that the loader would be used in the North Pole area.  Yingst testified that he used the loader to remove some dirt from White Eagle's property, which then was used for Yingst's landscaping projects.

Yingst later was arrested and convicted of felony theft unrelated to this case.  Yingst's employees returned the loader to Lakloey's equipment yard in damaged condition.  Fearing Yingst would be unable to pay the rental charges and the cost to repair the loader, Lakloey recorded a lien against White Eagle's property on October 27, 2006, for $9,663 plus costs, fees, and twelve percent interest.  Ballek learned of the lien and asked Lakloey to release it.  Although Lak-

---
1.  AS 34.35.050(4).

loey indicated a willingness to negotiate, the lien remained in place.

### B. Proceedings

White Eagle filed suit requesting that the court declare Lakloey's lien invalid and award actual and consequential damages caused by the lien. Lakloey answered and counterclaimed to foreclose its lien.

During discovery Lakloey submitted an interrogatory asking White Eagle to identify any actual or consequential damages caused by the lien. White Eagle responded by asserting damages from "[i]nterest lost due to the delay in closing sales of real property" and in "[l]ost tax advantage for delay of a planned IRS § 1031 exchange during the 2006 tax year," but provided no supporting evidence.

Shortly before trial Lakloey filed a motion in limine to exclude evidence of White Eagle's claim for actual and consequential damages, arguing that White Eagle had provided no information relevant to damages during discovery. White Eagle opposed the motion as untimely. The court granted the motion, but, noting that White Eagle had also argued an entitlement to inconvenience and frustration damages, gave White Eagle an opportunity to provide legal support authorizing such damages in the mechanic's lien context. White Eagle then voluntarily withdrew its request for inconvenience and frustration damages.

After a bench trial the court determined that (1) the purchase-and-sale agreement between Yingst and White Eagle "did not give rise to a contractor-subcontractor agreement" under the mechanic's lien statutes, and (2) Yingst was not otherwise White Ea-

gle's subcontractor for the condominium project on the property. The court also determined that Yingst "did not have actual or constructive authority to enter into any agreements that would obligate or bind White Eagle." For these reasons the court held that Lakloey was not legally entitled to file a lien on White Eagle's property. The court designated White Eagle the prevailing party and awarded it costs and reasonable attorney's fees pursuant to AS 34.35.074(a)(2);[2] no damages were awarded because White Eagle had withdrawn its damages claims.

White Eagle moved for attorney's fees in the amount of $43,853. Lakloey opposed the motion. The court awarded attorney's fees totaling $35,000.

Lakloey appeals the court's decision that the lien was invalid and the court's award of attorney's fees.

### III. STANDARD OF REVIEW

■ The validity of a mechanic's lien is a mixed question of fact and law.[3] Interpretation of the statutory requirements for a valid lien is a question of law to which we apply our independent judgment;[4] whether these requirements are met is a question of fact.[5] We review the trial court's factual findings for clear error, which exists when this court is left with a definite and firm conviction, based on the entire record, that a mistake has been made.[6]

■ We review a trial court's award of attorney's fees for abuse of discretion.[7] The interpretation of rules and statutes governing attorney's fees presents a question of law

---

**2.** AS 34.35.074 provides in part:

(a) A person injured by a violation of AS 34.35.050–34.35.120 may bring a civil action (1) except as provided in AS 34.35.062, for actual and consequential damages that are proximately caused by the violation plus costs, including reasonable attorney fees;
(2) to enjoin the violation, and if the person prevails, the person shall be awarded costs, including reasonable attorney fees.

**3.** *See, e.g., Vaara v. Ketchikan Spruce Mills*, 432 P.2d 618, 621–22 (Alaska 1967) (noting that com-

pliance with the mechanic's lien statutes involves factual and legal questions).

**4.** *D.H. Blattner & Sons, Inc. v. N.M. Rothschild & Sons, Ltd.*, 55 P.3d 37, 41 (Alaska 2002).

**5.** *See Vaara*, 432 P.2d at 621–22.

**6.** *Nerox Power Sys., Inc. v. M–B Contracting Co.*, 54 P.3d 791, 794 (Alaska 2002).

**7.** *Braun v. Denali Borough*, 193 P.3d 719, 726 (Alaska 2008).

to which we apply our independent judgment.[8]

## IV. DISCUSSION

### A. Lakloey Was Not Entitled To Record a Lien Against White Eagle's Property.

Lakloey contends that the use of its equipment to remove dirt from White Eagle's property entitled Lakloey to record a lien against the property under both AS 34.35.050(4) and AS 34.35.065. Alaska Statute 34.35.050(4) allows a mechanic's lien for a claimant who "furnishes equipment that is delivered to and used upon real property under a contract with the owner or the agent of the owner for the construction, alteration, or repair of a building or improvement." Alaska Statute 34.35.065 allows a mechanic's lien even when no such contract exists, if the equipment was used for construction of a building or improvement and the property owner knew this activity was taking place but did not disclaim responsibility for it.[9]

A lien claimant under either provision must show its equipment was used "for the construction, alteration, or repair of a building or improvement." The definition of "construction, alteration, or repair" includes partial construction.[10] " '[B]uilding or other improvement' includes a wharf, bridge, ditch, flume, tunnel, fence, well, land clearing, machinery, aqueduct to create hydraulic power, or for mining or other purposes, and all other structures and superstructures." [11] The key issue then is whether Yingst's purchase and removal of dirt from White Eagle's property was, as Lakloey argues, partial construction of an improvement and therefore lienable work.

The trial court concluded that the agreement for Yingst to pay White Eagle one dollar per yard of fill dirt removed from White Eagle's property "did not give rise to a contractor-subcontractor agreement for the purposes of AS 34.35.050." It also concluded that neither Yingst nor his company were "sub-contractors of White Eagle ... for the building/construction project on ... the White Eagle sub-division." Under the mechanic's lien statute, a "prime contractor" is defined as "a person who enters into a contract directly with an owner to furnish labor, materials, services, or equipment for the construction, alteration, or repair of a building or other improvement on the owner's real property." [12] A "subcontractor" is "a person who enters into a contract with a prime contractor to furnish labor, services, or equipment for the construction, alteration, or repair of a building or other improvement on the owner's real property." [13] In light of these statutory definitions, the court's conclusions that Yingst was not White Eagle's subcontractor and that their agreement did not create a "contractor-subcontractor agreement for the purposes of AS 34.35.050" must be read as a finding that Yingst did not engage in construction or alteration of a building or improvement on White Eagle's property by removing the fill dirt.

■ Lakloey contends that when considering its arguments, "the trial court erred by failing to apply the remedial intent and effect of the mechanic's lien statutes." We have previously observed that "there is a significant distinction between those portions of

---

8. See Grimes v. Kinney Shoe Corp., 938 P.2d 997, 1000 n. 7 (Alaska 1997) (holding prior version of Alaska Wage and Hour Act did not provide for attorney's fee award to prevailing defendants).

9. AS 34.35.065 provides in relevant part:
   (a) A building or improvement mentioned in AS 34.35.050 constructed with the knowledge of the owner of the land or the person having or claiming an interest in the land is considered to be constructed at the instance of the owner or person having or claiming the interest.
   (b) The interest owned or claimed is subject to a lien recorded under AS 34.35.050–34.35.120, unless

   (1) the owner or person having or claiming an interest in the land gives notice within three days after the owner or other person obtains knowledge of the construction ... that the owner or other person will not be responsible for it, by posting a notice to that effect in writing in some conspicuous place. . . .

10. AS 34.35.120(3).

11. AS 34.35.120(1).

12. AS 34.35.120(15).

13. AS 34.35.120(17).

Alaska mechanics' liens statutes which are remedial in nature, and those portions which articulate mandatory conditions precedent to the very creation and existence of the lien."[14] These mandatory conditions precedent, such as "the determination of who qualifies as a lienholder" are to be "strictly construed."[15]

■ Lakloey substantively argues that "[t]he foundations for White Eagle's buildings ... qualify as an 'other improvement'" and that the "removal of the [dirt] was a necessary component of ... White Eagle's condominium construction." Although foundations would be improvements, the evidence fails to show, and Lakloey does not explain, how Yingst's purchase and removal of dirt from standing piles on White Eagle's property was partial construction of these foundations or any other improvement.

The trial court found that Yingst contacted White Eagle and asked to purchase dirt, which had already been excavated and placed in piles, for use on Yingst's own projects. Yingst and White Eagle reached an agreement for Yingst to purchase dirt at one dollar per yard "and that [Yingst] would use his equipment and personnel to load and move the fill dirt." The agreement did not require Yingst to take any, all, or some specific amount of dirt from the property. The contract was solely for the sale of dirt, and Yingst's removal of that was not partial construction of the condominium foundations or any other improvement on White Eagle's property.[16]

Lakloey also argues that removing dirt from the piles was lienable activity because it benefitted White Eagle. Lakloey relies on testimony suggesting that there was more dirt than could be used as backfill on the property and that the dirt was of poor quality.[17] It also asserts that the removal of dirt sitting on the state's right-of-way potentially saved White Eagle from incurring fees and fines.

The trial court found that "[t]he agreement between Yingst and White Eagle to remove dirt was of primary benefit to Yingst and a secondary or ancillary benefit to White Eagle." Yingst may well have benefitted White Eagle in paying cash for dirt, saving White Eagle potential fines by the state, and freeing up space for construction. But beneficial activity alone does not give rise to a lien right unless it is part of the process of constructing, altering, or repairing some structure on the land,[18] and the sale of an unfixed quantity of dirt from a standing pile, without more, does not satisfy that element of the mechanic's lien statutes.

The trial court's finding that Yingst did not construct any improvement by removing fill dirt from White Eagle's property is not clearly erroneous. It was not error to con-

---

**14.** *H.A.M.S. Co. v. Elec. Contractors of Alaska, Inc.*, 563 P.2d 258, 262 (Alaska 1977).

**15.** *Nerox Power Sys., Inc.*, 54 P.3d at 800 (citing *H.A.M.S. Co.*, 563 P.2d at 262; AS 34.35.930).

**16.** We observe that Yingst's payment of money to White Eagle does not, in and of itself, compel the conclusion that his activity was not for the purpose of constructing an improvement. A contractor conceivably could be paid in kind (with dirt) for its work, and if the value of the dirt removed was greater than the value of construction work, then the contractor might pay cash to make up the difference. This was not the case here, as Yingst did not perform any construction work on the property.

**17.** Testimony to this effect was contradicted by testimony of other witnesses. One witness, White Eagle's foreman, testified that the sale of dirt to Yingst ultimately required White Eagle to purchase more dirt to finish grading and to use as backfill once the foundations were set. Anoth-

er witness testified that although some of the dirt was of poor quality, about half of it was good material and all could be used for fill dirt.

**18.** *Cf. Noble v. Gustafson*, 204 F. 69, 71 (9th Cir.1913). The Ninth Circuit, interpreting the territorial law of Alaska, held that miners did not have a valid mining lien for the work of sluicing a mining dump to extract gold from the soil. The mining lien statute gave a lien to "laborers and other persons performing labor upon the construction, development, alteration, or repair of any building, flume, mine, tunnel, aqueduct, or other structure." The court distinguished "the mining work, namely, the sinking of the shafts, the running of the tunnels and the development work in general," from the sluicing, which "was not a work incidental to the development of the mine or the alteration or repair of any building, flume, or tunnel in connection therewith." *Id.* As in *Noble*, the mere fact of financial benefit in this case does not give rise to a lien if the activity does not fall within the statutory terms.

clude that Yingst did not perform lienable activity on White Eagle's land with Lakloey's equipment and that Lakloey's lien therefore was invalid. We affirm the trial court's decision in favor of White Eagle.

### B. It Was Not Error To Award White Eagle $35,000 in Attorney's Fees.

Alaska Statute 34.35.074(a) provides full reasonable attorney's fees for successfully enjoining a mechanic's lien or for recovering damages caused by an invalid lien, which White Eagle sought in this litigation. The trial court determined that White Eagle was the prevailing party because it successfully challenged Lakloey's lien and Lakloey was unable to foreclose that lien. The trial court then applied the statutory attorney's fee provisions instead of Rule 82.[19] White Eagle requested an award of $43,853, representing all of its attorney's fees in the litigation, and the court awarded $35,000.

■ Lakloey argues the attorney's fee award should be set aside because it was not limited to fees White Eagle incurred on its successful injunctive claim. But the success of both the injunctive and damages claims depended on the legal validity of the lien, and the bulk of the litigation focused on that issue. The only fees attributable specifically to the damages claim, but not to the validity claim, were incurred in limited interrogatory responses, opposing the motion in limine, and preparing proposed jury instructions. Totaling the value of every time entry mentioning these activities results in legal fees of about $11,800, and because the work in drafting jury instructions and responding to interrog-

atories also involved issues unrelated to damages, this figure overstates the amount of fees attributable to the damages claim alone. The trial court reduced White Eagle's request for attorney's fees from $43,853 to $35,000, a difference of $8,853. Because this reduction is consistent with a determination that not all of White Eagle's legal fees were spent on the claim on which it prevailed, the ultimate award was not an abuse of discretion.[20]

■ Lakloey also argues the attorney's fee award should be set aside because the superior court did not offset fees awarded to White Eagle by the amount of fees Lakloey incurred in successfully defending White Eagle's damages claim, citing *Brand v. First Federal Savings & Loan*.[21] *Brand* involved a plaintiff seeking to foreclose liens on four separate properties owned by a bank.[22] The plaintiff successfully foreclosed on one lien; the bank successfully enjoined the three other liens.[23] The trial court did not award attorney's fees to either party.[24] The plaintiff appealed, arguing he was entitled to attorney's fees on his single successful foreclosure under AS 34.35.005(b), which provided that "[i]n an action to foreclose a lien, the court shall allow ... a reasonable attorney fee for the foreclosure of the lien."[25] We affirmed the trial court in that case, stating it was reasonable to assume that the trial court had taken the attorney's fees due the plaintiff for successfully foreclosing one lien, then offset those by the attorney's fees that would have been due the defendant for successfully defending against the other three liens.[26]

---

19. Alaska R. Civ. P. 82(a) ("Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.").

20. Lakloey also argues that White Eagle's motion for attorney's fees was unreasonable because it failed to identify which fees White Eagle incurred in pursuit of its successful claim to enjoin the lien and which fees it incurred in pursuit of its unsuccessful claim for damages. It is possible to determine from White Eagle's records which entries were attributable specifically to the damages claim. The trial court did not abuse its discretion by declining to reject the motion on its face.

21. *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks*, 478 P.2d 829 (Alaska 1970).

22. *Id.* at 829–30.

23. *Id.* at 829–30.

24. *Id.*

25. *Id.* at 833–34 (quoting AS 34.35.005(b)) (internal quotation marks omitted).

26. *Id.* at 834. AS 34.35.074(a)(2), providing a cause of action to enjoin an invalid lien, did not exist when *Brand* was decided. *See* ch. 102, § 6, SLA 1986. The bank therefore was assumed to be entitled to attorney's fees under Rule 82 for its

Lakloey cites *Brand* for its argument that "a trial court is justified in setting off fees for the successful claim against costs incurred on the successful defense of other claims." But we have long held that the determination of the prevailing party is within the province of the trial court's broad discretion.[27] And we have often stated that the prevailing party generally is the one who prevails on the main issue in the case.[28] In this case that party was White Eagle, and the trial court did not abuse its discretion in concluding that Lakloey was not entitled to an award of attorney's fees.

## V. CONCLUSION

The decision of the trial court is AFFIRMED.

MATTHEWS, Justice, not participating.

successful defense. *Brand*, 478 P.2d at 834. The 1986 statutory change eliminated the issue posed in *Brand*. When a party now brings a foreclosure action against a property owner but loses because the lien is invalid, the property owner should be awarded attorney's fees under AS 34.35.074(a)(2).

27. *See, e.g., Bliss v. Bobich*, 971 P.2d 141, 148 (Alaska 1998).

28. *See, e.g., K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 721 (Alaska 2003); *Gwich'in Steering Comm. v. State, Office of the Governor*, 10 P.3d 572, 584 (Alaska 2000) ("To decide which party prevails, the court must determine, in an overall sense, which party the decision favors.") (internal quotation marks and citations omitted).