**David E. NASH, Appellant,**

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMIS- SION, Appellee.**

No. 7016.

Supreme Court of Alaska.

March 23, 1984.

Loren Domke, Juneau, for appellant.

John B. Gaguine, Asst. Atty. Gen., and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOW- ITZ, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Justice.

In 1979, the Alaska Limited Entry Act was amended to add AS 16.43.250(d) which allowed an individual who "has applied for two or more entry permits ... for the same

specific fishery resource and the same specific type of gear, but has failed to qualify for an entry permit for that type of fishery resource and gear ... [to] credit his cumulative qualifications to the fishery for which he is most qualified." [1] David Nash, appellant, had applied and failed to qualify in 1975 for Southeast and Cook Inlet salmon drift gill net permits. In 1980, following passage of AS 16.43.250(d), Nash sought to cumulate his qualifications, but his application was denied by the Commercial Fisheries Entry Commission. The Commission held that Nash did not come within the coverage of subsection (d) because, although he had applied for a Cook Inlet drift gill net permit, he was not eligible to make such an application since he had not participated in that fishery as a gear license holder. Nash appealed to the superior court, which ruled against him, and now appeals to this court making the following three substantive arguments:

1. that AS 16.43.250(d) as enacted in 1979 covers all who have applied for two or more entry permits even if they were not eligible to apply;

2. that if AS 16.43.250(d) contains an implied eligibility requirement, such a requirement is a violation of the equal rights, opportunities, and protection clause of the Alaska Constitution; [2] and

3. that he was eligible to apply for a Cook Inlet permit because he was a constructive holder of a gear license permit for the Cook Inlet Fishery.

We reject these arguments and affirm. [3]

## I. THE IMPLIED ELIGIBILITY REQUIREMENT

AS 16.43.250(d) provides that an individual may cumulate points from two or more fisheries only if the individual has "applied for" permits from the fisheries. Nash urges us to reject the Commission's interpretation of this language which would require that the individual be eligible to apply. Because the interpretation of this statutory language does not involve the particularized expertise of the administrative agency, we will exercise independent review. *See State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77, 80–81 (Alaska 1979); *Union Oil Co. v. Department of Revenue*, 560 P.2d 21, 23–24 (Alaska 1977).

Subsection 250(d), if considered in isolation, could be read to support Nash's interpretation. However, "statutes relating to the same subject matter should be read together as a whole in order that a total scheme evolves which maintains the integrity of each act and avoids ignoring one or the other." *Hafling v. Inlandboatmen's Union of Pacific*, 585 P.2d 870, 878 (Alaska 1978). Thus, we must consider other provisions of the Limited Entry Act dealing with permit applications in inter-

---

1. AS 16.43.250(d) provided:
   If an individual has applied for two or more entry permits under AS 16.43.260(d) for the same specific fishery resource and the same specific type of gear, but has failed to qualify for an entry permit for that type of fishery resource and gear, the individual may credit his cumulative qualifications to the fishery for which he is most qualified. The commission shall issue an entry permit to the individual for the fishery if the individual's cumulative qualifications result in placing the individual in a category designated in (b) of this section. The qualifications credited to a fishery under this subsection may not be considered for the purpose of ranking the applicant under (a)–(c) of this section for any other fishery. The commission may not revoke any permit previously issued notwithstanding the issuance of permits in excess of the maximum number

established under AS 16.43.230–16.43.240 as a result of this subsection.
Ch. 64, § 1, SLA 1979.

2. Alaska Const. art. I, § 1 provides:
   This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

3. Nash also raised several procedural issues in his appeal to this court, however our consideration and rejection of his substantive points moots these procedural issues.

preting the "applied for" language of § 250(d).

AS 16.43.260(a) provides that an individual must have participated in the fishery in question as the holder of a gear license before the relevant qualification date in order to submit an acceptable application for a limited entry permit.[4] Thus, in previous cases, we have stated that individuals who do not meet the requirements of this section are precluded from submitting applications. *Commercial Fisheries Entry Commission v. Apokedak,* 606 P.2d 1255, 1260 (Alaska 1980); *Isakson v. Rickey,* 550 P.2d 359, 361 (Alaska 1976). We conclude therefore that "applied for" as used in § 250(d) must be read in conjunction with the rest of the Limited Entry Act to mean "apply for permits within the eligibility requirements of § 260(a)."

Any other interpretation would lead to absurd results. It is illogical to suppose that the legislature in enacting § 250(d) intended to reward persons who ignored the threshhold eligibility requirements and filed an application in spite of them. Such an intention would result in favoring those who had ignored the law in preference to others who had followed it. No reason why the legislature might have wished to make such a distinction has been suggested, nor can we think of any.

## II. EQUAL PROTECTION

■ AS 16.43.250(d), as interpreted to include an implied eligibility requirement, creates two different classes of gear operators: first, those who are eligible to apply for two or more entry permits because they were gear license holders, and thus who can benefit from § 250(d); and second, those who are ineligible to apply because they did not hold a gear license in two fisheries. Nash argues that this classification violates the equal protection clause of the Alaska Constitution.

As previously noted, AS 16.43.260 provides that the only persons eligible to apply for limited entry permits are those fishermen who have participated in the fishery in question as holders of gear licenses before the relevant qualification date. This requirement was challenged on state and federal equal protection grounds in *Commercial Fisheries Entry Commission v. Apokedak,* 606 P.2d 1255 (Alaska 1980). We held that a classification based on whether individuals were gear license holders was constitutional. That holding is controlling here.

## III. WAS NASH A CONSTRUCTIVE HOLDER OF A GEAR LICENSE?

■ Nash's claim that he held a constructive gear license for the Cook Inlet drift gill net fishery arises out of facts occurring in the 1971 salmon season. In 1968, 1969, and 1970 Nash had crewed for his father in the Cook Inlet gill net fishery on the vessel Skimmer, which was owned by a cannery. In 1971 his father decided to fish elsewhere and Nash made arrangements with the cannery to fish the Skimmer in Cook Inlet. However, because Nash was then only 16 years old, the cannery required that the vessel and gear be licensed in the name of an adult. Nash persuaded George Goff to fish with him on the Skimmer, and Goff became the gear license holder for the vessel during the 1971 season. Goff fished for the first two weeks of the season on the Skimmer and then left. For the final week of the season Nash fished alone, making deliveries under the license which had been issued to Goff. Nash argues that since he sold fish as the captain of a vessel which was licensed during a portion of the 1971 season, he should be deemed a "constructive" holder of a gear license.

Our recent decision in the second *Apokedak* case, *Commercial Fisheries Entry Commission v. Apokedak,* 680 P.2d 486 (Alaska, 1984), has made this argument

---

**4.** AS 16.43.260(a) provides:

The commission shall accept applications for entry permits only from applicants who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses issued under AS 16.05.536–16.05.670 and interim-use permits under AS 16.43.210(a) before the qualification date established in (d) or (e) of this section.

untenable. Apokedak was a full partner in a fishing venture in which his partner was the named gear licensee. Apokedak claimed that he was eligible to apply for a limited entry permit as the holder of a gear license under AS 16.43.260(a). We rejected this contention, stating:

> In our view, the term 'holders of gear licenses' can only be reasonably construed to refer to individual named licensees. As of the enactment of the Limited Entry Act in 1973, of which AS 16.43.-260(a) is a part, a gear license was a personal license. Gear could not be fished except in the presence of the named licensee; and the gear license could not be transferred except to aleviate hardship due to the inability of the licensee to continue fishing. AS 16.05.-670. When the legislature limited the right to apply for an entry permit 'holders of gear licenses issued under AS 16.05.536–16.05.670 ...', it meant the individuals who had been issued gear licenses under these statutory sections; not such individuals and their partners as well.

Since Nash was not the individual named licensee, he was not a holder of a gear license and was thus not eligible to apply for the Cook Inlet gill net salmon fishery.[5]

In conclusion, we AFFIRM the decision of the superior court.

---

**5.** It appears that in two cases, Nos. 75–88A and 75–88B, the Commission did utilize a constructive possession theory in order to rule that applicants who were not named gear licensees were eligible to apply for permits. Those cases, however, had been overruled by later decisions of the Commission. Nos. 75–337; 75–376. These later decisions do refer to a three part test which, if met, could allow a person not a named licensee to be considered as eligible to apply for a permit. The three standards are: (1) did the transferor's actions following the time the transfer was to have taken place indicate that the transferor intended to transfer his gear license as of that date and that he thought he had done so; (2) did the alleged transferee's actions following the time the transfer was to have taken place indicate that the alleged transferee thought the gear license had been transferred to him; and (3) given the facts of the situation and the persons involved, was the alleged transferee reasonable in his belief that the license had been transferred to him? No. 75–337, at 6; No. 75–376, at 3. We have no occasion here to consider the validity of this test in light of the second *Apokedak* decision, because it is clear that Nash would not qualify under the test.