John W. NYSTROM, Appellant,

v.

BUCKHORN HOMES, INC., an Alaska
Corporation, Appellee.

No. S–2342.

Supreme Court of Alaska.

July 28, 1989.

J. Randall Luffberry, Palmer, for appellant. Donald M. Johnson and Michael Cohn, Tobey & Johnson, Anchorage, for appellee.

Michael W. Price, Groh, Eggers & Price, Anchorage, for amicus curiae, Alaska Land Title Ass'n.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE and COMPTON, JJ.

## OPINION

MATTHEWS, Chief Justice.

## I. INTRODUCTION

This case arises out of a lien foreclosure action on real property between appellant John Nystrom (Nystrom) and appellee Buckhorn Homes, Inc. (Buckhorn). The superior court found that Buckhorn's mechanics' lien took priority over Nystrom's prior-recorded deed of trust and granted Buckhorn's motion for summary judgment. On appeal, Nystrom raises four grounds on which he believes the superior court's judgment should be set aside.

First, Nystrom claims that Buckhorn's lien was untimely and thus invalid. Second, Nystrom claims the superior court misinterpreted AS 34.35.120(10) by finding that Buckhorn is an "individual" and therefore entitled to preferential lien treatment under AS 34.35.060(c). Third, Nystrom submits that his prior foreclosure of the real property, pursuant to a prior deed of trust, extinguished Buckhorn's lien in the property and therefore the superior court erred in denying his motion for summary judgment. Finally, Nystrom contends the trial court erred in executing the judgment against him personally, with provisions for deficiency judgment after the foreclosure sale.

We hold that there are genuine issues of material fact as to whether Buckhorn's lien was filed on time. Further, we agree with Nystrom that the trial court misinterpreted the definition of "individual" set forth in AS 34.35.120(10). However, Nystrom's foreclosure sale did not extinguish Buckhorn's lien, if it was valid, because of lack of notice. Finally, since Buckhorn was not in contractual privity with Nystrom, the personal judgment against Nystrom should be reversed.

## II. FACTS AND PROCEEDINGS BELOW

Nystrom purchased a tract of land near Palmer in November 1975. In May 1980, Nystrom sold the property and a trailer house to Jack and Margaret Hays (collectively hereinafter Hays) for $21,000. The Hays gave Nystrom a promissory note for the purchase price secured by a deed of trust on the property.

The Hays made payments for several years but became delinquent beginning in February 1983. Nystrom contacted the Hays on several occasions over an eighteen month period attempting to cure the delinquency. When these efforts proved unsuccessful, Nystrom initiated non-judicial deed

of trust foreclosure proceedings on October 22, 1984.

In June 1984—four months before Nystrom filed notice of foreclosure proceedings—the Hays contracted with Buckhorn for the purchase and installation of a modular home, well, and septic system on the property. Under the contract terms, the Hays agreed to pay Buckhorn $97,852, which included satisfaction of the Nystrom deed of trust.

After receiving earnest money from the Hays, Buckhorn contacted City Mortgage, a loan processor in Eagle River. City Mortgage checked the Hays' credit and employment records and began the process of securing construction financing.

On June 25, 1984, City Mortgage received the Hays' credit report from First National Bank of Anchorage. The report indicated an outstanding balance on the Nystrom promissory note of $20,108.32 and, erroneously, that the Hays had promptly met their scheduled monthly payments. City Mortgage relayed this information to Alden Marrs, the sales manager at Buckhorn, and requested an appraisal of the property. Marrs testified that based upon this information he assumed he had "a viable deal" and had "every reason to proceed with construction on that basis."

Buckhorn began construction in August 1984 with the installation of a well, septic system, and foundation.[1] On September 10, 1984, Buckhorn attached the modular home to the foundation.

In October 1984, City Mortgage received, and relayed to Buckhorn, an updated credit report on the Hays. Again, the report erroneously indicated that the Hays were prompt in their payments to Nystrom.[2]

On October 22, 1984—following City Mortgage's last credit check—Nystrom commenced deed of trust foreclosure proceedings on the Hays' property. Nystrom's counsel obtained a title report on the Hays' property. The report indicated that the property was subject only to the Nystrom deed of trust and encumbrances that existed prior to Nystrom's sale to the Hays in 1980. Accordingly, Nystrom attempted to serve only the Hays with copies of the Notice of Default and Foreclosure. Nystrom sent notices to the Hays by certified mail on three separate occasions but the Hays did not pick them up.[3] Although Nystrom lived in Palmer, he did not inspect the property prior to the foreclosure sale.

In December 1984, Nystrom's counsel posted the Notice of Default and Foreclosure in the Palmer Post Office, City Hall, and Courthouse and published the same in the Anchorage Daily News on December 5, 12, 19, and 26.

As Nystrom was foreclosing on the Hays' property, Buckhorn continued working on the Hays' home. In October, Buckhorn laid carpeting, installed a washer, dryer, and dishwasher, and performed additional well work. Around November 1, 1984, the Hays moved from the trailer house into the home.[4] Buckhorn finished working on the Hays' house on December 21, 1984, when it replaced defective wall paneling and floor joists broken during installation of the home in September.[5]

On January 30, 1985, Nystrom purchased the Hays' property at a non-judicial sale with an offset bid of $22,000.[6] Nystrom then surveyed the property, discovered the newly constructed home, and served the Hays with eviction notices. This was Nys-

---

1. Buckhorn's subcontractors performed most of the work.

2. City Mortgage also conducted a preliminary title search in September 1984. Marrs testified that he did not receive a copy of this report.

3. Nystrom attempted to serve the Hays with copies of the Notice of Default and Sale on October 24, 1984, December 5, 1984, and January 5, 1985.

4. Buckhorn anticipated closing with the Hays in November, but mistakes and confusion in the submission of the Hays' loan application caused delay. As discussed below, it was not until January 1985, that City Mortgage discovered the Hays' credit problem and rejected their loan application.

5. Buckhorn was unable to replace the panels and joists until December when replacements arrived from the factory.

6. The land and home had an appraised value in 1984 of $111,000.

trom's first knowledge of Buckhorn's interest in the property.

During January 1985, Marrs was away on vacation. He returned on January 30, and on February 3, City Mortgage informed him that the Hays had credit problems and therefore did not qualify for a loan. When Marrs contacted the Hays to discuss alternative financing arrangements, they presented Marrs with Nystrom's eviction notice. This was Buckhorn's first knowledge that the property had been foreclosed.

On February 27, 1985, Buckhorn recorded a claim of lien against the Nystrom property for $63,676, plus interest. Jack Hays filed for bankruptcy in March 1985.

After unsuccessful settlement negotiations between Buckhorn and Nystrom, Buckhorn filed a complaint for lien foreclosure and equitable claims for *quantum meruit* and unjust enrichment on June 12, 1985.[7] On March 31, 1986, Nystrom moved for summary judgment arguing, *inter alia,* that the foreclosure of his prior deed of trust extinguished Buckhorn's lien under Alaska's mechanics' lien statutes. On July 10, 1986 Buckhorn cross-moved for summary judgment. Buckhorn argued that its lien fell within the exception set forth in AS 34.35.060(c),[8] which gives a super-priority to liens of "individuals" as defined in AS 34.35.120(10).[9]

After reply memoranda by both parties, the trial court granted Buckhorn's motion for summary judgment. In her April 7, 1987, memorandum, Judge Hunt concluded Buckhorn was an "individual actually performing labor upon a building or other improvement in its original construction." Therefore, Buckhorn's lien took priority over Nystrom's prior deed of trust under AS 34.35.060(c).

The trial court entered final judgment on June 1, 1987. The court awarded Buckhorn $63,515 and ordered the sale of the real property and application of the proceeds to Buckhorn with the remainder of the proceeds, if any, paid to Nystrom. Finally, the trial court granted Buckhorn the right to execute against Nystrom upon the judgment to the extent of any deficiency between the judgment and the foreclosure sale price of the property. Nystrom appeals these rulings.[10]

### III. DID THE SUPERIOR COURT ERR IN GRANTING SUMMARY JUDGMENT AGAINST NYSTROM?

■ When reviewing a grant of summary judgment, this court must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts. *Merdes v. Underwood,* 742 P.2d 245, 248 (Alaska 1987). When, as here, a question of statutory interpretation is involved, this court will independently evaluate the trial court's interpretation. *State, Commercial Fisheries Entry Comm'n v. Templeton,* 598 P.2d 77, 81 (Alaska 1979).

#### A. *Is Buckhorn Homes, Inc. an "Individual" Entitled to Preferential Lien Treatment Under AS 34.35.-060(c)?*

##### 1. Did Buckhorn Timely File a Claim of Lien?

As explained above, Buckhorn is a licensed general contractor engaged in the sale and installation of prefabricated modu-

---

7. Buckhorn also named as a defendant the Alaska Title Guaranty Company. On June 28, 1985, Alaska Title filed a disclaimer of interest and is no longer a party to this suit.

8. AS 34.35.060(c) provides:
 A lien created by AS 34.35.050–34.35.120 in favor of an individual actually performing labor upon a building or other improvement in its original construction or of a trustee of an employee benefit trust for those individuals is preferred to a prior encumbrance upon the land on which the building or other improvement is constructed.

9. AS 34.35.120(10) provides:
 (10) "individual" means a natural person who actually performs labor upon a building or other improvement as an employee of the owner or any contractor furnishing labor, materials, services, or equipment for the construction, alteration or repair of a building or other improvement.

10. Amicus Curiae Alaska Land Title Association filed a brief in support of Nystrom.

lar homes. As such, Buckhorn may secure payment of a contract price by filing a lien. AS 34.35.050(1) and (6).[11]

A prerequisite to a valid lien is the timely recording of the lien claim. AS 34.350.68(c).[12] Unless the real property owner records a "notice of completion" of construction as provided in AS 34.35.071, a claimant must record a lien within ninety days after completion of performance. AS 34.35.068(a).[13] The Hays did not file a notice of completion. Accordingly, Buckhorn had ninety days after completing construction to file its claim of lien. *Id.*

■ Nystrom argues that Buckhorn completed "original construction" on October 31, 1984, and merely performed "warranty work" on December 21, 1984. Therefore, according to Nystrom, Buckhorn failed to file a claim of lien within ninety days after completion of performance as required by AS 34.35.068(a).

The superior court found that Buckhorn completed construction on or before December 22, 1984, when it replaced defective wall paneling and floor joists broken during installation of the home. Buckhorn filed a claim of lien on February 27, 1985, which is within ninety days of December 22, 1984. The superior court concluded that Buckhorn timely filed a claim of lien.

"The question of whether the performance has been completed or has ceased is a factual one." B. Blum, *Mechanics and Construction Liens in Alaska, Oregon and Washington,* § 6.2.2, at 192 (1987) (hereinafter Blum). The question of when Buckhorn completed construction is also one of fact. The evidence on the record relating to this question is ambiguous and incomplete. Nystrom claims that construction was completed by October 2, 1984, based upon Buckhorn's appraiser's certification that construction of the home was 100% complete on that date.[14] On the other hand Buckhorn claims that after October 2, 1984, Buckhorn had to replace defective floor joists and paneling and therefore completed construction on December 21, 1984.[15] The facts are not clear in the record before us.

We find that the question of when Buckhorn completed construction raises a genuine issue of material fact and hold that the trial court erred in granting summary judgment to Nystrom. We remand this issue to the trial court for a determination of the facts at trial. However, we proceed here to address the questions of law raised in this appeal to provide guidance to the trial court in its deliberations on remand.

### 2. Is Buckhorn's Lien Superior to Nystrom's Deed of Trust?

If it is determined at trial that Buckhorn's lien is valid, the next issue would be whether Buckhorn's mechanics' lien is superior to Nystrom's deed of trust. When a mechanics' lien competes with another encumbrance on the property, such as a deed of trust, the general rule of priority—the

---

**11.** AS 34.35.050(1) and (6) provide:
Lien for labor or materials furnished. A person has a lien, only to the extent provided under this chapter, to secure the payment of the contract price if the person
(1) performs labor upon real property at the request of the owner for the construction, alteration, or repair of a building or improvement;
. . . .
. . . or;
(6) is a general contractor.

**12.** AS 34.35.068(c) provides:
A claim of lien is enforceable only if recorded by a claimant within the time specified in (a) or (b) of this section.

**13.** AS 34.35.068(a) provides in pertinent part:
Time periods for claiming liens. (a) If a notice of completion is not recorded by the owner as provided in AS 34.35.071, a claim of

lien shall be recorded not later than 90 days after the claimant
(1) completes the construction contract; or
(2) ceases to furnish labor, materials, services or equipment for the construction, alteration or repair of the owner's property.

**14.** Buckhorn's appraiser's certificate, identified by Nystrom as Exhibit A, does not appear in the record.

**15.** To support its position, Buckhorn cites *Stephenson v. Ketchikan Spruce Mills, Inc.,* 412 P.2d 496, 499 (Alaska 1966) (the fact that the cost of the final items of construction was small in comparison with the overall cost of the building is not fatal where it appears that furnishing of the materials was done in good faith and in the normal course of business, and not for the purpose of extending the time to file a claim of lien).

interest that is earlier in time will have priority of right—usually governs. Blum, § 7.4, at 253. Alaska Statute 34.35.060(a) embodies the first-in-time priority rule:

> Except as provided in (c) of this section, an encumbrance which is properly recorded shall be preferred to a lien created under AS 34.35.050–34.35.120 unless the claim of lien under AS 34.35.070 or notice of claim to lien under AS 34.35.064 has been recorded before the encumbrance. The preference granted for a prior mortgage or deed of trust under this section applies without regard to when the sums are disbursed or whether the disbursements are required under the terms of the loan agreement.

The exception to the first-in-time rule is found in AS 34.35.060(c), which provides:

> A lien created by AS 34.35.050–34.35.120 in favor of an *individual* actually performing labor upon a building or other improvement in its original construction or of a trustee of an employee benefit trust for those individuals is preferred to a prior encumbrance upon the land on which the building or other improvement is constructed.

(Emphasis added.)

In the instant case, Nystrom recorded his deed of trust in May 1980. Buckhorn's priority date is February 27, 1985—the date Buckhorn recorded its claim of lien.[16] Consequently, unless Buckhorn is an "individual [who] actually performed labor ... upon a building in its original construction," Nystrom's prior-recorded deed of trust is superior to Buckhorn's lien.

### 3. Is Buckhorn an "Individual"?

#### a. *Introduction*

A major issue of law in this case is whether Buckhorn is an "individual" as contemplated by AS 34.35.120(10).

AS 34.35.120(10) provides:

"individual" means a natural person who actually performs labor upon a building or other improvement as an employee of the owner or any contractor furnishing labor, materials, services, or equipment for the construction, alteration or repair of a building or other improvement.

Buckhorn argues that the term "individual" includes (1) natural persons actually performing labor as employees of an owner and (2) contractors who may be natural persons or corporations. Nystrom and Amicus assert that the definition of individual does not include corporate contractors such as Buckhorn. Under their interpretation, "individual" means a *natural person* who is not a contractor and who actually performs labor as an *employee* of the real property owner, or as an *employee* of the contractor. In support of their interpretation, Nystrom and Amicus argue (1) that the evolution of lien law in Alaska shows a legislative intent to exclude contractors from the definition of individuals, and (2) reading the Act as a whole, the context of "individual" in other lien statutes excludes corporate contractors. For the reasons set forth below, we agree with Nystrom's position.

#### b. *Legislative History*

■ Prior to the 1978 amendments to Alaska mechanics' lien statutes, any lien filed by persons engaged in "original construction" was prior in right to any pre-existing encumbrance. AS 34.35.060(c).[17] "In the case of 'original construction,' the legislature intended to subordinate to some extent the principle of first in time, first in right, to a social interest in securing mechanics' lienors." *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks*, 478 P.2d 829, 832 (Alaska 1970). This feature was

---

**16.** As Professor Blum explains, Buckhorn's priority is based on the date of filing: "Under AS 34.35.060, the lien is effective from the date on which the claim of lien is filed." Blum, § 7.2, at 244.

**17.** Prior to the 1978 amendment AS 34.35.060(c) provided:

> A lien created by [sections] 50–120 of this chapter in favor of a *person* actually performing labor upon or furnishing materials used in a building or other improvement in its original construction is preferred to a prior lien, mortgage, or other encumbrance upon the land on which the building or other improvement is constructed.
> (Emphasis added.)

evidently unique to Alaska. *Thorpe Constr. Co. v. Irvin*, 367 F.Supp. 87, 89–90 (D. Alaska 1973); Dieterich & Conkle, *The Operation of Alaska's Mechanics' Lien Law*, 7 U.C.L.A.–Alaska L.Rev. 368, 390–91 (1978).

In 1978, the legislature substantially revised the mechanics' lien statutes, including AS 34.35.060, governing priorities between encumbrances and liens. The legislature also adopted the definition of "individual" set forth in AS 34.35.120(10).[18] Buckhorn argues that the 1978 amendments to AS 34.35.060(c) "implement[ed] the broad remedial purposes of the Mechanics' Lien Statutes" by expressly recognizing the lien rights of individual laborers. Nystrom argues instead, that the legislature intended to restrict, rather than expand, lien rights.

House Bill 739 (H.B. 739), "An Act relating to materialmen and mechanics' liens," was introduced into the Alaska House of Representatives on February 7, 1978. Section 2 of H.B. 739 repealed AS 34.35.060 and re-enacted it to read:

(a) Except as provided in (c) of this sec. and sec. 61(a)(6) of this chapter, a lien mortgage, deed of trust or other encumbrance shall be preferred to a lien under secs. 50–120 of this chapter which has not been recorded before the recording of that lien mortgage, deed of trust or other encumbrance.

H.B. 739, 10th Leg., 2d Sess. (1978).

James Baldwin, Legislative Counsel to the Legislative Affairs Agency, explained the intent of section 2 in his February 22, 1978, memorandum as follows:

[T]he "intent" of this section is, with certain exceptions, to reorder the priorities accorded liens. Under existing law a lender may not have priority over a subsequent recorded mortgage or deed of trust. HB 739 specifies that the date of priority of a construction lien is fixed on the date of the lien claim.

Memorandum from James Baldwin to Representative Joe Hayes (Feb. 22, 1978) (hereinafter Baldwin).

Section 4 of H.B. 739 amended AS 34.35.060(c) to read:

A lien created by secs. 50–120 of this chapter in favor of a person actually performing labor upon [OR FURNISHING MATERIAL USED IN] a building or other improvement in its original construction *and who is not a "contractor" as defined in AS 08.18.171* is preferred to a prior lien, mortgage, or other encumbrance upon the land on which the building or other improvement is constructed.

H.B. 739, 10th Leg., 2d Sess. (1978) (emphasis in original).

Baldwin explained section 4 as follows: Under existing law, a supplier and a person furnishing labor at the site of new construction has a preference over a prior recorded lien, mortgage, deed of trust or other encumbrance. *HB 739 would delete this priority for suppliers and qualify the priority for laborers by providing that they must not be a "contractor" as defined under AS 08.18.171.*

Baldwin (emphasis added).

House Bill 739, as introduced, clearly intended to extinguish the preference "original" construction liens enjoyed over prior-recorded encumbrances. At the same time, the legislature did not intend to eliminate the priority of liens of laborers who were not contractors.

The lien preference for laborers defined as natural persons is further supported by staff member Andrew Brown's March 21, 1978 Memorandum to the House Commerce Committee. For example, Brown states that "[t]he priority of an *individual laborer's* lien claim is kept in [section 4]."[19] Brown reiterates that section 4 "requires laborers to be persons not falling within the definition of 'contractor' in AS 08.18.171."[20] Moreover, Brown explained that Section 18 of H.B. 739 (relating to waiver

---

**18.** *See supra* note 10.

**19.** Memorandum from Andrew Brown to the Alaska House of Representatives, House Com-

merce Committee (March 21, 1978) (emphasis added) (hereinafter Brown).

**20.** *Id.*

of lien rights, codified at AS 34.35.117(b)) [21] "would allow any claimant, *except an individual laborer,* to waive his lien or stop-payment notices rights which have arisen up to the time of the waiver." [22]

In an April 3, 1978, memorandum to the House Commerce Committee, Richard L. Block, Director of the State Division of Insurance, recommended several changes in H.B. 739 "to make it conform to the recommendations ... made by the Division of Insurance, many of which were agreed to at the last meeting of the House Commerce Committee." [23] First, in reference to AS 34.35.050(2),[24] Block wrote: "It is the intent to permit a lien in favor of an employee benefit trust which runs in favor of individuals, which is later defined as *natural persons performing labor on the job.*" [25]

Block also specifically addressed the definition of "individual" in AS 34.35.120(10):

> [H]ere it is necessary only to define the individual as being a *natural person* but not limited to original construction. In order to clarify that individuals include persons who may have contractors licenses but who are employees on a particular job, additional language must be added. This is another matter that was agreed upon by the committee and not included in the last draft.[26]

Block then proposed the following definition of individual:

> (10) "individual" means a natural person who actually performs labor upon a building or other improvement, and who is not a contractor as defined in AS 08.18.171, or if a contractor, is not acting as

a contractor on the job but acting as an employee, including having payroll deductions made from all remuneration paid him.[27]

Considering this legislative history as a whole, we believe that the legislature intended to define "individual" as a natural person who actually performs labor upon a building as an employee of the owner or as an employee of the contractor. Professor Blum agrees with this conclusion. He interprets the definition of "individuals" as "natural persons who perform labor as *employees* of the owner or contractor." Blum, § 7.3, at 251 n. 30, § 8.5.4, at 317 (emphasis added).

#### c. *The Context of "Individual" in Other Mechanics' Lien Sections*

 We are supported in our conclusion concerning the meaning of the term "individual" by reference to the usage of that term in other sections of the lien law. "Statutes relating to the same subject matter should be read together as a whole in order that a total scheme evolves which maintains the integrity of each act and avoids ignoring one or the other." *Nash v. State,* 679 P.2d 477, 478 (Alaska 1984); *City of Anchorage v. Scavenius,* 539 P.2d 1169, 1174 (Alaska 1975) (each part of a statute should be construed with every other part or section so as to produce a harmonious whole). Accordingly, both AS 34.35.117 and .095 are helpful in determining the meaning of the term "individual" as it is used in the lien law.

---

**21.** AS 34.35.117(b) provides: "An *individual* described in AS 34.35.120(10) may not waive right to claim a lien under AS 34.35.050–34.35.120." (Emphasis added.)

**22.** Brown, *supra* note 20, at 3 (emphasis added).

**23.** Memorandum from Richard L. Block, Director, Division of Insurance, Department of Commerce and Economic Development, State of Alaska, to the Alaska House of Representatives, House Commerce Committee (April 3, 1978) (hereinafter Block).

**24.** AS 34.35.050(2) provides:
Lien for labor or material furnished. A person has a lien, only to the extent provided

under this chapter, to secure the payment of the contract price if the person
. . . .
(2) is a trustee of an employee benefit trust for the benefit of *individuals* performing labor on the building or improvement and has a direct contract with the owner or the agent of the owner for direct payments in the trust; (Emphasis added.)

**25.** Block, *supra* note 24, at 16 (emphasis added).

**26.** *Id.* at 5–6.

**27.** *Id.* at 6.

### (1) AS 34.35.117

Alaska Statute 34.35.117 allows all claimants, except "individuals," to waive lien and stop-payment notice rights:

(a) Except as provided under (b) of this section a written waiver of lien or stop-payment notice rights created under AS 34.35.050–34.35.120 signed by a claimant requires no consideration and is valid and binding. A waiver permitted under this section may not relate to labor, materials, services or equipment furnished after the date the waiver is signed by the claimant.

(b) An *individual* described in AS 34.35.-120(10) may not waive right to claim a lien under AS 34.35.050–34.35.120. A waiver which purports to waive the lien rights of that individual or class or individuals is void.

(Emphasis added.)

Nystrom and Amicus argue that subsection (b) reflects a policy decision by the legislature to provide individual laborers with additional wage protection. This protection, they argue, is unnecessary for corporate contractors. They also assert that if the definition of "individual" includes contractors, AS 34.35.117(a) does not apply to anyone.

Buckhorn did not respond to this argument.

Alaska Statute 34.35.117 compels a finding that "individual" does not include contractors for the reasons presented by Nystrom. If Buckhorn is an "individual," then all general contractors, including large, sophisticated contractors would lose the ability to waive their lien rights. Such a result is contrary to the intent of lien waivers—to help facilitate project financing.[28]

The legislative history of AS 34.35.117 also supports a finding that "individual" does not include contractors. As explained above, the 1978 legislature enacted AS 34.-35.117 as part of H.B. 739. Andrew Brown's March 21, 1978 memorandum informed Commerce Committee members that this statute "would allow any claimant, *except an individual laborer*, to

waive his lien or stop-payment notice rights.... Any attempted waiver by an individual laborer would be void." (Emphasis added.)

The superior court's definition of "individual" proves unworkable when applied to AS 34.35.117.

### (2) AS 34.35.095

 Alaska Statute 34.35.095 governs the amount a "claimant" or "individual" may recover upon a lien:

(a) Except as provided in (c) of this section, a *claimant* may recover upon a lien recorded by the claimant only the amount due to the claimant according to the terms of the *contract*, after deducting all claims of other persons claiming through the claimant for work done and materials furnished.

(b) [Repealed]

(c) An *individual* described in AS 34.35.-120(10) may recover upon a lien recorded by the individual only the amount due according to the terms of the *employment*.

(Emphasis added.)

Nystrom and Amicus argue that the clear implication of the use of "employment" with "individual" is that "individual" refers only to natural persons who are "employed." Contractors, on the other hand, are rarely, if ever, "employed." Instead, contractors, like Buckhorn, enter into construction contracts. Buckhorn did not respond to this argument.

A review of the history of AS 34.35.095 confirms Nystrom's position.

Prior to the extensive legislative amendments to the mechanics' lien statutes in 1978, AS 34.35.095 read:

A *contractor* may recover upon a lien filed by him only the amount due to him according to the terms of his contract, after deducting all claims of other persons for work done and materials furnished.

(Emphasis added.)

This version of AS 34.35.095 had been interpreted not to apply to subcontractors

---

**28.** Brown, *supra* note 20, at 3.

and materialmen because they were not in contractual privity with the owner. *Clay v. Sandal,* 369 P.2d 890 (Alaska 1962); *Moores v. Alaska Metal Bldgs., Inc.,* 448 P.2d 581, 583 (Alaska 1968). For this reason, the recovery of subcontractors and materialmen was limited to the reasonable value of performance, not the contract price. *Moores,* 448 P.2d at 583; *see also* Blum, § 4.2.3.a, at 124.

The 1978 amendments to AS 34.35.095, set forth below, inserted the underlined terms in subsection (a) and added subsections (b) and (c):

> (a) A *prime* contractor [29] may recover upon a lien *recorded* [filed] by him only the amount due to him according to the terms of his contract, after deducting all claims of other persons *claiming through him* for work done and materials furnished.
>
> (b) A claimant other than a prime contractor or an individual described in [sec.] 120(10) of this chapter may recover upon a lien recorded by him an amount not to exceed that portion of the unpaid contract price attributable to labor, materials, services or equipment furnished....
>
> (c) An individual described in [sec.] 120(10) of this chapter may recover upon a lien recorded by him only the amount due to him according to the terms of his employment.

Application of Buckhorn's definition of "individual" to the current and 1978 version of AS 34.35.095 leads to absurd results. As an "individual" Buckhorn could recover an amount based upon the terms of its "employment" without deducting the "claims of other persons claiming through it"—as required by subsection (a). This result is unwarranted and unintended.

### d. *Conclusion*

■ Based upon the foregoing analysis, we reverse the superior court and hold that the term "individual" as it is used in AS 34.35.120(10) means a natural person who is not acting as a contractor and who is employed by the owner of real property or employed by a contractor. Buckhorn's lien, if valid, was thus junior to Nystrom's prior-recorded encumbrance. AS 34.35.-060(a). Accordingly, the next issue is whether Nystrom's foreclosure extinguished Buckhorn's lien.

### B. *Did Nystrom's Foreclosure of His Prior Deed of Trust, Without Notice to Buckhorn, Extinguish Buckhorn's Lien?*

#### 1. Introduction

■ Under our deed of trust statutes, a foreclosure sale by a senior lienor extinguishes the junior lienor's interest. *Burnett, Waldock & Padgett v. C.B.S. Realty,* 668 P.2d 819, 822 (Alaska 1983). The purchaser at a deed of trust sale takes the same title which the maker of the deed of trust had at the time the instrument was executed. AS 34.20.090(a); *Burnett,* 668 P.2d at 822. Therefore, land purchased at a deed of trust sale is subject to prior encumbrances, but not to those made after the deed of trust is executed. *Burnett,* 668 P.2d at 823.

Citing these general principles, Nystrom asks this court to find that his January 1985 deed of trust sale extinguished Buckhorn's lien. Thus, as offset purchaser at the sale, Nystrom claims that he received the same title conveyed to the Hays in June 1980, free of any subsequent encumbrances.

Buckhorn argues that Nystrom's foreclosure did not extinguish its junior lien because it did not have notice of the foreclosure. Buckhorn claims that because Buckhorn timely filed a claim of lien within 90 days of completion of performance as required by AS 34.35.068, it may foreclose on its lien.

Whether a foreclosure sale, without notice to unrecorded lien claimants, extin-

---

**29.** "Prime contractor" meant a "person who enters into a contract directly with an owner for the construction, ... of a building ... on the owner's property." AS 34.35.120(14). "General contractor" meant "a person who is a prime contractor and has responsibility for supervising all other contractors furnishing labor, materials...." AS 34.35.120(8). The present definitions are essentially the same. *See* AS 34.35.-120(8) & (15).

guishes a subsequently perfected mechanics' lien is an issue of first impression in this state. For the reasons set forth below, we conclude that under Alaska's trust deed statutes, a duty exists to inspect the property before foreclosure.

### 2. Diligent Inquiry and Actual Notice Under AS 34.20.070(c)

■ Buckhorn argues that under AS 34.20.070(c) and *Rosenberg v. Smidt,* 727 P.2d 778, 780 (Alaska 1987), the trustee and beneficiary must exercise due diligence to notify any person with a lien or interest before the foreclosure sale. Absent physical inspection of the property prior to foreclosure, a valid junior lien is preserved if the senior lienor forecloses without notification to the junior lienor.

Nystrom responds that requiring personal inspection of the property further complicates the trustee's tasks and unnecessarily increases the cost of foreclosure. In addition, Nystrom asserts that the notice requirements of AS 34.20.070(c) do not require inspection. Thus, absent actual notice of Buckhorn's interest, the trustee was not required to mail notice of the foreclosure to Buckhorn.

AS 34.20.070(c) governs notice requirements in Deed of Trust foreclosure proceedings:

> Within 10 days after recording the notice of default, the trustee shall mail a copy of the notice by certified mail to the last known address of each of the following persons or their legal representatives (1) the grantor in the trust deed; (2) the successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice, or who is in possession of the property; (3) any other person in possession of or occupying the property; (4) any person having a lien or interest subsequent to the interest of the trustee in the trust deed, where the lien or interest appears of record or where the trustee or the beneficiary has actual notice of the lien or interest....

In *Rosenberg,* this court held that trustees are obligated to exercise due diligence in attempting to notify those who will be affected by the foreclosure. *Rosenberg,* 727 P.2d at 783.

The trust deed notice statute contemplates physical inspection of the property before the sale by the trustee or beneficiary. For example, AS 34.20.070(c)(2) requires the trustee or beneficiary to notify "the successor in interest to the grantor whose interest appears of record *or* of whose interest the trustee or beneficiary has actual notice, *or who is in possession of the property."* (Emphasis added.) Subsection (3) further requires notice to *"any other person* in *possession of or occupying* the property." (Emphasis added.)

Thus the statute requires the trustee to check the record *and* visit the property for a determination of whether there is another person occupying or in possession of the property. In order to insure that all interested parties, including those without recorded interests, have notice of the foreclosure, the trustee or beneficiary should inspect the property.

In this case, Nystrom lacked knowledge of Buckhorn's interest because he failed to inspect the property. Had he visited the property before the sale, Nystrom would have discovered new construction and a potential third-party interest.

Buckhorn's lien, if valid, therefore survived the foreclosure sale. However, under the facts of this case, Nystrom may be able to extinguish the lien by conducting the foreclosure sale again, this time with proper notice.

### C. *Is Nystrom Personally Liable to Buckhorn?*

■ Buckhorn argues that Nystrom is personally liable to Buckhorn on the equitable theory of unjust enrichment. In *Frontier Rock & Sand v. Heritage Ventures,* 607 P.2d 364 (Alaska 1980), we dealt with the theory of unjust enrichment in the context of a landlord-lessor-contractor triangle. We stated:

> The general rule is clear: In the absence of anything to show that the landlord ordered or authorized the work, ratified

the work after it was done, or was in such a close relationship to the tenant that it can be said that the contract was executed for the landlord's benefit, a plaintiff cannot collect from the landlord under a claim of unjust enrichment, even where the landlord knowingly acquiesced in and ultimately benefits from the work performed. A landlord is not a guarantor of contracts entered into between his tenants and third parties.

*Frontier Rock & Sand,* 607 P.2d at 368.

In our view, the above language is also applicable to cases in which the three parties involved are lendor, owner, and contractor. The record does not support any of the exceptions referred to in the foregoing language. Thus, we conclude that this is not an appropriate case for application of the doctrine of unjust enrichment.

## IV. CONCLUSION

In summary, we make the following holdings in this case.

First, the trial court erred in deciding that the question of when Buckhorn completed construction on the Hays' house did not raise a genuine issue of material fact. Thus, the trial court erred in granting summary judgment to Buckhorn.

Second, the trial court erred, as a matter of law, in construing the term "individual" in AS 34.35.120(10) to include Buckhorn and in awarding priority to Buckhorn's lien, if valid, over Nystrom's prior recorded deed of trust.

Third, Nystrom's foreclosure of his prior deed of trust without prior notice to Buckhorn did not extinguish Buckhorn's lien, if valid. Nystrom had a duty, as a matter of law, to exercise due diligence to notify any person with a lien or interest, of the foreclosure sale. Due diligence included physical inspection of the property. This requirement insures that the foreclosure will proceed with actual notice to all persons with interests in the property when the foreclosure process begins.

Finally, the trial court erred in awarding restitution to Buckhorn under the doctrine of unjust enrichment.

The judgment of the superior court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

MOORE, J., not participating.